# Birmingham Railway, Light & Power Co. *v.* Ozburn.

## *Injury to Property.*

(Decided Nov. 14, 1911.  Rehearing denied May 9, 1912.
56 South. 599.)

1. *Street Railroads; Interurban Railroads; Crossings; Signals.* —The provisions of section 5473, Code 1907, have no application to interurban railroads operated by electricity.

2. *Same.*—Independent of the statute, it is incumbent on one operating an interurban railroad to see that such signals are given of the approach of one of its cars to a public road crossing, as are reasonably to be demanded.

APPEAL from Birmingham City Court.

Heard before Hon. C. W. FERGUSON.

Action by H. F. Ozburn against the Birmingham Railway, Light & Power Company for damages to an automobile caused by a collision with one of its electric cars at a public crossing. Judgment for plaintiff and defendant appeals. Reversed and remanded.

TILLMAN, BRADLEY & MORROW, and L. C. LEADBETTER, for appellant. The provisions of section 5473, Code 1907, have no application to interurban railroads operated by electricity.—*Jacobs v. Birm. Min.*, 92 Ala. 187. The court erred in refusing the 5th charge.—*Anniston E. & G. Co. v. Rosen*, 159 Ala. 195; *B. R. L. & P. Co. v. Hayes*, 153 Ala. 174.

ALLEN & BELL, for appellee. As shown by the notes to section 5473-5483, the legislature had in mind to enact this statute with reference to present conditions in the business sought to be regulated, and the court was without error in the construction put upon it.—*Harris v. N. C. & St. L.*, 153 Ala. 139; *L. & N. v. Harris*, 89 Ala.; *So. Ry. v. Powell*, 136 Ala. 232; *L. & N. Anchors*, 114 Ala. 492; *Mont. St. Ry Co. v. Lewis*, 148 Ala; 134; 29 Fed. cases 1033; 60 Fed. 886; 91 Wis. 374.

WALKER, P. J.—The injury complained of resulted from a collision between the defendant's (appellant here) electric street car and an automobile at a point on defendant's line between Birmingham and Bessemer where it crossed a public road. The place of the collision was 6 or 7 miles from Birmingham; the distance between Birmingham and Bessemer by that line being between 12 and 13 miles. It does not appear from the evidence that the road crossing was within the limits of any village, town, or city. The evidence was in conflict as to what, if any, signals were given by the

motorman in approaching the crossing. In the pleadings and testimony the car was spoken of as a stree car, but it is plain that the railroad upon which it was operated was not exclusively a street railroad in the sense that it traversed only the streets of a municipality, but was in part a street railroad and in part an interurban railroad. The charge of the court was to the effect that the provisions of section 5473 of the Code as to ringing the bell or blowing the whistle were applicable to the case. The assignments of error raise the question whether the rulings to this effect were correct.

On its face section 5473 of the Code imposes duties as to blowing the whistle or ringing the bell in certain designated situations upon "the engineer, or other person having control of the running of a locomotive on any railroad." Is the language of that section fairly susceptible of such a construction that its requirments can be regarded as applying also to the mortorman or conductor of a street or interurban electric car?

It is suggested that the reasons which led to the conclusion that the provisions of section 5474 of the Code in reference to the duties of railroad companies whose tracks cross each other at grade apply alike to ordinary steam railroads of the old type, to railroads operated with steam dummy engines, and to street electric railroads, are also sufficient to support the conclusion that the provisions of section 5473 are broad enough in their scope and meaning to be applicable to a person having control of the running of an electric street car. In the case of *Birmingham Mineral R. Co. v. Jacobs,* 92 Ala. 187, 9 South. 320, 12 L. R. A. 830, it was decided that a railroad using dummy steam engines and operated beyond city limits was a "railroad" within the meaning of that term as used in section 5474, and was subject to the provisions of that section. In the case of *Louisville &*

*Nashville R. Co. v. Anchors,* 114 Ala. 492, 22 South. 279, 62 Am. St. Rep. 116, it was decided that that section applied to an electric railroad running from a city to a point beyond its corporate limits. And in the case of *Birmingham Southern R. Co. v. Powell,* 136 Ala. 232, 33 South. 875, it was recognized that the provisions of that section are applicable to street railroads operated by electricity. In the opinion of the court in *Birmingham Mineral Railroad Co. v. Jacobs, supra,* in which was first presented the question of the statute which is now section 5474 of the Code being applicable to railroads of a type which was unknown at the time of the enactment of the statute, it was recognized, at page 194 of 92 Ala., at page 324 of 9 South. (12 L. R. A. 830), that many of the statutory provisions then in force for the regulation of railroads "seem not to be properly adapted to street railroads or dummy lines"; but it was decided that that particular provision was broad enough in its terms to embrace railroads operated by dummy engines. It is to be observed that that section uses the generic term "railroads," and the court has not found anything in its provisions to exclude from its operation railroads operated by dummy engines or by electric motors. In the opinion in the case of *Louisville & Nashville R. Co. v. Anchors, supra,* the court rested its conclusion, not alone upon the consideration that the statute in question was a provision for the safety of the traveling public, but also upon the fact that it does not specify any particular kind of railroad; the court saying that "a railroad, within the provisions of the statute, does not cease to be such railroad because it may discontinue the use of steam, and substitute that of electricity." The generality of the language used in that section is such that it may well be construed as embracing types of railroad unknown at the time of its enactment, while another

statute prescribing regulations of the operations of railroads may be framed in such terms that it cannot be made to apply to the operation of a new type of railroad without giving to the language used a meaning which it does not express.

Section 5473 of the Code is much more specific in its provisions than section 5474. In the enactment of the former statute the Legislature dealt with the matter of signals to be given and precautions to be observed. It might have undertaken, in addressing itself to that subject, to prescribe regulations which would be applicable to the operation of any vehicle on a railroad by mechanical motive power. But it cannot fairly be said that it did so in the enactment in question. That statute made provision for duties to be performed in the specific case of "the engineer, or other person having control of the running of a locomotive on any railroad." At the date of the original enactment electricity was not in use as a motive power on railroads, and common usage had adopted the word "locomotive" to designate a steam engine designed and adapted to travel on a railroad. The word still retains that meaning. Century Dictionary. In common usage it is not understood to describe or include an electric street car. To give that import to the word as used in that statute would amount to imputing to the statute a meaning which it does not express. Besides, the regulations prescribed show that the operations referred to were different from those of a modern street or interurban railroad. The words of the statute must be understood as used in reference to the subject-matter in the mind of the Legislature. A statute dealing with the general subject of railroads may apply to a railroad of a different type from that in use at the time of its enactment; but the fact that a statue prescribing duties to be performed in the operation of rail-

roads was enacted in the interest of public safety is not enough to make it applicable to the operation of electric street railroads when its provisions make it plain that the Legislature had it in mind only to establish requirements to be observed in running steam engines on railroads. In the case of *Dean v. State,* 149 Ala. 34, 43 South. 24, it was held that a statute which made it an offense for the conductor of a railroad train to fail to keep a sufficiency of good drinking water thereon did not apply to a conductor of an electric car which operated on a street or interurban railroad between Birmingham and Bessemer. In the opinion in that case it was said: "We think that this statute was intended to apply to such trains as were known at the time of its first enactment, when electric street or suburban cars were unknown." We are of opinion that a similar statement may properly be made in reference to section 5473 of the Code.

Of course it is incumbent on one operating a street or interurban railroad to see to it that such signals or warning are given of the approach of one of its cars to a public road crossing as may reasonably be demanded by all the surrounding conditions, and for negligence in that respect it is liable for injuries proximately resulting; but we cannot assent to the conclusion of the trial court, expressed in its charge to the jury, that the specific requirements prescribed by section 5473 of the Code apply to the motorman, or other person having control of the running of an electric street car. It was in error in its rulings to this effect.

Reversed and remanded.