SELLERS et al. v. GALVESTON, H. & S. A. RY. CO.    (No. 365.)*

(Court of Civil Appeals of Texas. Beaumont. Dec. 11, 1918. Rehearing Denied Jan. 15, 1919.)

1. APPEAL AND ERROR ☞968, 1045(3)—JURY ☞97(4)—CHALLENGE FOR CAUSE—INTEREST —INFLUENCE ON VERDICT — DISCRETION — —HARMLESS ERROR.

Where a juror was an employé of a railroad which was a constituent of defendant railroad, and stated on his voir dire examination that a large verdict against defendant might affect his employment but that he could rise above such influence and render a fair verdict, held, that overruling of challenge for cause was not error; the juror not sitting in the case.

2. APPEAL AND ERROR ☞1056(4)—ERROR CURED BY FINDINGS.

In actions for injuries to passengers in automobile in crossing collision, exclusion of plaintiffs' evidence to show that gong and whistle on railroad's car were not so strong and could not be heard so far as bell and steam whistle in use on defendant's steam locomotives, held not available error, in view of special finding of jury that gong was sufficient to give reasonable warning to persons using crossing.

3. RAILROADS ☞345(3)—INJURIES AT CROSSING—EVIDENCE—SUPPORT BY PLEADINGS.

In action against railroad for injuries to passengers in automobile struck at crossing by railroad's motorcar, court properly overruled plaintiff's motion to exclude evidence as to crossing bell maintained by railroad which pleaded contributory negligence.

4. TRIAL ☞350(6)—SUBMISSION OF ISSUE— IMMATERIALITY. ˙

In actions against railroad for injuries to passengers in automobile struck by car with gong and whistle sufficient to give reasonable warning, as jury found, court properly refused

---

☞For ·other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes
*Writ of error denied by Supreme Court March 19, ˙1919.

to submit issue requested by plaintiffs whether accident would have happened had car been equipped with different bell and whistle, as required ih certain cases by Rev. St. 1911, art. 6564.

5. APPEAL AND ERROR ⟺1062(2)—HARMLESS ERROR—SPECIAL FINDINGS—EFFECT OF FINDINGS BY JURY.

In action for injuries to passengers in automobile in collision with motorcar, where issue of negligence and liability were resolved for defendant, and issue of contributory negligence resolved against plaintiffs, court properly refused request that in answering special issues submitting issue of contributory negligence jury would not find plaintiffs negligent merely because driver of car was.

6. RAILROADS ⟺327(12)—INJURIES AT CROSSING—CONTRIBUTORY NEGLIGENCE.

Where passengers in automobile approaching railroad crossing were warned by bell that car or cars were approaching in time to have caused driver to stop, and also could have seen approaching car in time, they were negligent, so that railroad was not liable to them despite any negligence of motorman.

7. TRIAL ⟺356(5)—FAILURE TO FIND ON ISSUES—IMMATERIALITY.

In actions against railroad for injuries in automobile in collision at crossing with car, where jury found, in answer to special issues, that plaintiffs were negligent, failure to find on other issues was immaterial, and did not preclude judgment·for defendant railroad.

Appeal from District Court, Harris County; J. D. Harvey, Judge.

Consolidated actions by Mrs. Emma Sellers and others against the Galveston, Harrisburg & San Antonio Railway Company. From judgment for defendant, plaintiffs appeal. Affirmed.

Jno. W. Parker and K. C. Barkley, both of Houston, for appellants.

Lane, Wolters & Story and McMeans, Garrison & Pollard, all of Houston, for appellee.

BROOKE, J. A. G. Sellers, Mrs. Julia Sellers, and Mrs. Coma Sellers, were riding in an automobile owned and driven by R. L. Robinson, and in a collision between the automobile and a motorcar on the railway of the Galveston, Harrisburg & San Antonio Railway Company, at a public road crossing near El Buey, in Harris county, on May 8, 1915, A. G. Sellers was killed, and Mrs. Julia Sellers and Mrs. Coma Sellers were each injured. Mrs. Emma Sellers, as surviving wife, and Anita Kaleta Sellers, as surviving child, and J. C. Sellers and Julia Sellers, as surviving parents of A. G. Sellers, deceased, sued the Galveston, Harrisburg & San Antonio Railway Company for damages for his death. The number of the case is 67143. J. C. Sellers sued for the injuries to his wife, Mrs. Julia Sellers. The number of the case is

67268. J. K. Sellers sued for the injuries to his wife, Mrs. Coma Sellers. The number of the case is 67271. By agreement the three cases were consolidated and tried under the style and number of the Emma Sellers case. The plaintiffs predicated their right of action upon a number of grounds of negligence, among them being:

(1) Failure to provide the motorcar with a bell of at least 30 pounds weight, and with a steam whistle, or a whistle that was adequate to give reasonable notice of the approach of the motorcar to crossings, in consequence whereof the statutory signals were not given of the approach of the motorcar to the crossing.

(2) Failure of the employés operating the motorcar to keep a proper lookout for persons upon or about to enter upon the crossing, and that had they done that they would have seen deceased and the other occupants of the automobile in time to have avoided the collision, or to have so reduced the speed as to have greatly lessened the force of the impact.

(3) Operating the motorcar at a great and excessive speed in approaching the crossing, and failure to have the motorcar under the control they should have had, and that a man of ordinary care would have had under the circumstances.

Defendant answered by general denial, and specially that the deceased and the other occupants of the automobile, including Robinson, the driver, were guilty of contributory negligence, specifying the facts of such negligence.

The case was tried on special issues and, on the answer returned, the court entered judgment for defendant. Plaintiffs objected to the method taken by the court to bring about a verdict, moved to set aside the verdict, and, the motion being overruled, filed a motion for new trial, which was overruled; the plaintiffs excepting to the action of the court, and perfecting their appeal to the Court of Civil Appeals for the First Supreme Judicial District, from which court the case has been duly transferred, and is now before us for disposition.

The assignments of error copied in this brief were made grounds for new trial in the motion filed therefor by plaintiffs, and at the end of each reference is made to the place in the record where the same may be found.

[1] The first assignment of error calls in in question the action of the court as being error in not sustaining appellants' challenge for cause of the juror E. A. Greenstein on his voir dire, as shown by bill of exception No. 1.

The proposition under this assignment is:

"The juror stating on his voir dire that he was in the employ of the Southern Pacific, and

that the Texas & New Orleans Railroad, on which he was working, was one of the constituent lines of the Southern Pacific, the G., H. & S. A. being another; that the employés on the Texas & New Orleans had seniority rights which might result in their transfer to the G., H. & S. A.; and that he realized that a verdict for plaintiffs would in effect be a verdict against his employer, and that such a verdict might affect his employment on the G., H. & S. A.—the law implied a bias on his part in favor of his employer, or a prejudice against the plaintiffs, which disqualified him to sit as a juror in the case, and the court should have sustained the plaintiffs' challenge of the said juror for cause."

The counter propositions urged are:

(1) The juror was not disqualified as a matter of law, and his answers to questions propounded to him upon his voir dire show that he was not disqualified as a matter of fact.

(2) Whether or not the juror was qualified was a matter intrusted to the sound discretion of the court; and, in the absence of an abuse of that discretion, the appellate court will not revise the ruling that the juror was not disqualified.

(3) Even if it be held that the court abused its discretion in overruling the plaintiffs' challenge for cause, no error calculated to cause or probably causing the rendition of an improper judgment is shown, for the reason that the juror did not sit in the case. And the juror Look, whom plaintiffs accepted in his stead, was not shown to be disqualified; and, if he was objectionable to plaintiffs, no reasons were given by plaintiffs' counsel showing why he was objectionable.

The examination of this juror was as follows:

"Q. All I want to know, will the fact that you are working for the T. & N. O. and the suit is against the G., H. & S. A., will that influence your action one way or the other in finding a verdict? If it will, say so. A. No, sir.

"Q. It will not? A. No, sir.

"Q. Then the mere fact that you are employed by the T. & N. O., and the G., H. & S. A. is a railroad company, and possibly has the same president and vice president, if that will cause you to lean one way or the other, or I will ask you further, do you believe that you might be influenced one way or the other? A. No, sir."

And again:

"Q. Suppose you were to render a $10,000 verdict in this case, or a $15,000 verdict in this case, for the plaintiffs, might that not affect your employment over on the G., H. & S. A.? A. Yes, sir; it might.

"Q. Well, now then, when you realize that, wouldn't that fact, or might not that fact, influence you in reaching a verdict in this case? A. No, sir.

"Q. You think not? You would rise above it? A. Yes, sir.

"Q. You would be superior to all considerations of that sort? A. Yes, sir."

After a careful examination, we are of the opinion that this assignment must be overruled. Wyres v. State, 74 Tex. Cr. R. 28, 166 S. W. 1150.

[2] The second assignment of error challenges the action of the trial court in not admitting the evidence of the witnesses Singleton et al., offered by plaintiffs to show that the gong and whistle on the motorcar was not nearly so strong and could not be heard nearly so far as the 30-pound bell and steam whistle in use on the locomotive engines operated on defendant's railway, and on the other railways of the state. The proposition under this assignment is:

"Assuming for the moment that the statute regarding bell and whistle on locomotives does not apply in whole or in part to motorcars, it was nevertheless the duty of defendant to provide the motorcar with bell and whistle that were sufficient to give reasonable notice of the approach of the motorcar to the public road crossings; and, inasmuch as the volume of the sound made by the gong and whistle used on the motorcar could not be shown by direct proof so that a jury could determine from such proof whether it was sufficient or not, the evidence offered by plaintiffs of comparison between the gong and the whistle on the motorcar, and the bell and whistle on locomotives in general use on the railroads of the state, should have been admitted. The question was one that could only be determined by the jury by comparison, and, as such, the evidence was admissible."

On the contrary, it is contended:

"Whether the gong and whistle on the motorcar was as strong and could be heard as far as the bell and whistle used on locomotive steam engines was immaterial under the facts of this case, in view of the finding of the jury, to which appellants have not excepted, that the motorcar was provided with a gong and whistle sufficient to give reasonable warning to persons using or about to use the crossing of the approach of the motorcar thereto. The court therefore did not err in refusing to admit the testimony."

The court submitted to the jury the following special issues:

(a) "Was the motorcar provided with a gong sufficient to give reasonable warning to persons using or about to use the said crossing of the approach of the motorcar thereto? Answer, 'Yes,' or 'No.'"

(b) "Was the motorcar provided with a wnistle sufficient to give reasonable warning to persons using or about to use the said crossing of the approach of the motorcar thereto? Answer, 'Yes,' or 'No.'"

Both of these special issues were answered in the affirmative by the jury. These findings are not attacked in any way by appellants in their brief. A careful examination persuades us to believe that this assignment must be overruled.

[3, 4] The third assignment is as follows:

"The court erred in overruling plaintiffs' motion to exclude all the evidence relating to the

crossing bell, because there was no pleading to authorize its admission, made at the conclusion of the evidence for both parties, as shown by their bill of exception No. 3."

The proposition under this assignment is:

"The assignment is submitted as a proposition, with the additional statement that the existence of the bell formed no part of plaintiffs' case, and its presence at the crossing was not developed by plaintiffs in making out their case."

On the contrary, it is urged:

"Defendant having pleaded the contributory negligence of the occupants of the car as the proximate cause of their misfortune, any testimony tending to prove its allegations in this regard by showing that they knew of the approach of the motorcar was admissible; and this could be shown by proof that they were warned by the ringing of the crossing bell, as well as by proof that they were warned or knew of the approach of the motorcar in any other way."

We will consider, in connection with this assignment, the fourteenth assignment, which is as follows:

"The court erred in refusing plaintiffs' special request marked 'A.'"

The proposition under this is:

"The statute regarding bell and whistle on locomotive engines applies to motorcars run upon railroads, and the plaintiffs were entitled, in view of the evidence, to have the jury make findings of fact which would bring their case within the operation of the statute, as they sought to do by requesting submission of the special issue."

On the contrary, it is contended:

"The jury having found, in answer to special issues III and IIIa, that the motorcar was provided with a gong and whistle sufficient to give reasonable warning to persons using or about to use the crossing of the approach of the motorcar, which findings the appellants do not controvert, the further inquiry, in the absence of any statutory requirement, of whether if the motorcar had been provided with a different kind of a whistle and a different kind of a bell, which, if they had been sounded 80 rods from the crossing, etc., was wholly immaterial."

And it is further contended:

"The statute requiring 'a bell of at least thirty pounds weight' and a steam whistle to be 'placed on each locomotive engine,' applied to steam locomotives drawing trains, and not to motorcars using gasoline power, which came into existence long after the statute was passed (1883); and the courts will not, by judicial construction, extend the statutes to cases not in the legislative mind, and not embraced in the act, by fair interpretation of the legislative will, at the time of its adoption."

The statute cited and relied upon by appellants is, in part, as follows:

"Art. 6564. *Bell and Steam Whistle; Duty as to.*—A bell of at least thirty pounds weight and a steam whistle shall be placed on each locomotive engine, and the whistle shall be blown and the bell rung at the distance of at least eighty rods from the place where the railroad shall cross any public road or street, and such bell shall be kept ringing until it shall have crossed such public road, or stopped; and each locomotive engine approaching a place where two lines of railway cross each other, shall, before reaching such railway crossing, be brought to a full stop; and any engineer having charge of such engine, and neglecting to comply with any of the provisions of this article, shall be punished for such neglect as provided in the Penal Code. * * *" Rev. St. 1911.

Under these assignments, we will call attention to Birmingham, etc., Co. v. Ozburn, 4 Ala. App. 399, 56 South. 599; Birmingham, etc., Co. v. Green, 4 Ala. App. 417, 58 South. 801; Fallon v. West End, etc., Ry. Co., 171 Mass. 249, 50 N. E. 536; Stranahan v. Sea View Ry. Co., 84 N. Y. 314; Henson v. Williamsville, G. & St. L. Ry. Co., 110 Mo. App. 595, 85 S. W. 597; Jarvis v. Hitch, 161 Ind. 217, 67 N. E. 1057; Dean v. State, 149 Ala. 34, 43 South. 24; Commonwealth v. Ry. Co., 141 Ky. 583, 133 S. W. 230; Indianapolis, etc., Ry. v. Andis, 33 Ind. App. 625, 72 N. E. 145. In the Birmingham v. Ozburn Case, supra, damages were sought to be recovered against the appellant, in an action predicated on the failure of that company to give the statutory warnings as the car approached a crossing. It was contended that article 5473 of the Code of Alabama imposed the duty on the engineer or other person having control of the running of the locomotive on any railroad of blowing the whistle and sounding the bell. The issue in the case was whether or not that statute and its requirements could be regarded as applying to the motorman or conductor of a street or interurban electric car. The court, in holding that said statute was not applicable, used this language:

"That statute made provision for duties to be performed in the specific case of 'the engineer, or other person having control of the running of locomotive on any railroad.' At the date of the original enactment, electricity was not in use as a motive power on railroads, and common usage had adapted the word 'locomotive' to designate a steam engine designed and adapted to travel on a railroad. The word still retains that meaning. Century Dictionary. In common usage, it is not understood to describe or include an electric street car. To give that import to the word as used in that statute would amount to imputing to the statute a meaning which it does not express. Besides, the regulations prescribed show that the operators referred to were different from those of a modern street or interurban railroad. The words of the statute must be understood as used in reference to the subject-matter in the mind of the Legislature. A statute dealing with the general subject of railroads may apply to a railroad

of a different type from that in use at the time of its enactment; but the fact that a statute prescribing duties to be performed in the operation of railroads was enacted in the interest of public safety is not enough to make it applicable to the operation of electric street railroads, when its provisions make it plain that the Legislature had it in mind only to establish requirements to be observed in running steam engines on railroads."

In this opinion it is held that it is incumbent on one operating a street or interurban railroad to exercise a proper degree of care with reference to giving notice and sounding warnings on its approach to crossings.

In disposing of the case of Birmingham, etc., Co. v. Green, supra, the court adopts the opinion rendered in the case of Ry. Co. v. Ozburn, thereby approving said opinion, and in disposing of that case holds as follows:

"We have again, on the present appeal, carefully considered the applicability of this statute (5473) to a modern street or interurban railway, operating cars propelled by electric power, through the streets of a city or town into adjacent territory, and have given close attention to the cases cited by the appellee, and to the argument of counsel contained in brief, and were aided, also, by oral argument; but we find nothing to convince us that the reasoning and distinctions drawn in Ozburn's Case, showing the inapplicability of this statute to cases of this kind, are incorrect.

"While it is true that those sections embraced in that article of the Code containing 'regulations affecting public safety' will be generally extended to new things, which the language of the act is sufficient, reasonably and fairly construed, to comprehend, for the purpose of promoting the real intention of the enactments, as was the case, for example, in reference to section 5474 (Birmingham Min. R. R. Co. v. Jacobs, 92 Ala. 187, 9 South. 320, 12 L. R. A. 830; L. & N. R. R. Co. v. Anchors, 114 Ala. 492, 22 South. 279, 62 Am. St. Rep. 116), yet our courts cannot, with a due regard to the unquestioned and well-recognized rules of statutory construction, stretch those statutes so as to make them apply to changed conditions, even though we give full significance to the knowledge that the enactment is a regulation affecting public safety, when the plain language of the statute itself is such as to make it totally inapplicable to those new things resulting from changed conditions and different modes of travel. The intent of the particular statute is first to be sought in the language of the statute itself. 2 Lewis' Sutherland, Statutory Construction (2d Ed.) c. 13, § 366; United States v. Goldenburg, 168 U. S. 95, 18 Sup. Ct. 3, 42 L. Ed. 394. To hold that section 5473 is applicable to this case would be for us to say that a street car, in its popular sense, the plain sense in which people generally understand it, is a locomotive (Harrison v. State, 102 Ala. 170, 15 South. 563); and that the person in control of its operation through the streets of a city, town, or village must be guilty of negligence for a failure to blow the whistle or ring the bell one-quarter of a mile before reaching any public road crossing or regular stopping place, notwithstanding the person in control would thereby be required to be giving signals for one crossing before it reached and stopped at several other intervening crossings within the one-quarter of a mile. This would not be giving to the statute a sensible application, but one leading to an unjust and absurd conclusion, which, if possible, is to be avoided in construing legislative intention in the interpretation of statutes. In re Chapman, Petitioner, 166 U. S. 661, 17 Sup. Ct. 677, 41 L. Ed. 1154.

"If new conditions have arisen since the passage of the statute that have not been provided for, this would not justify a judicial addition to the language of the statute itself, so as to make it apply to the new conditions or contingencies, nor justify a tortious construction of the language used, to make the statute apply to things or conditions plainly not comprehended within the terms of the statute, which would lead to an absurdity and injustice in the construction or application given. What we have said in the case of Ozburn, supra, fully covers the subject, and we are unwilling to make any change in the rule there announced."

Besides, the court, in its general instructions to the jury, preceding the submission of special issues, charged them as follows:

"The failure of a railroad company to ring the bell or blow the whistle on the approach of the train to a public crossing is not negligence to a person or persons struck by a train at a crossing who knew or had been warned that a train was approaching the crossing, and if the party or parties approaching the crossing had knowledge that the train or car was approaching, and attempted to cross the railroad track, then it is immaterial, so far as the defendant is concerned, whether the whistle was blown or bell rung before the said train or car reached the crossing; the law being that, if the person approaching the crossing knew that the train or car was approaching the crossing, then no duty rested upon the engineer or motorman to ring the bell or blow the whistle to warn said party or parties that said train or car was approaching the crossing."

This charge was not excepted to by the appellants, and they must therefore be held to have approved of it. We find no error in the matters referred to, and these assignments are overruled.

[5] The sixteenth assignment of error complains of the court's refusing plaintiffs' special request marked "G"; and the proposition under this assignment is:

"The evidence conclusively showing that those in the automobile were guests of R. L. Robinson, who owned and drove it, and the defendant's answer claiming that plaintiffs could not recover, not only because of the negligence of those for whose death and injury they sued, but because of the negligence of R. L. Robinson, the driver of the automobile, Robinson's negligence, if any, not being imputable to those in the automobile with him, under such circumstances, the plaintiffs were entitled to have the jury properly instructed on the point, and the court should have given the special request asked by them."

208 S.W.—26

This special request was:

"Plaintiffs request the court to instruct the jury that, in answering the special issues submitting the question of the contributory negligence of Mrs. Julia Sellers, Mrs. Coma Sellers, and A. G. Sellers, you will not find them guilty of such negligence simply because you may believe R. L. Robinson, the driver of the car, was guilty of such negligence; but you will determine the question of their contributory negligence by what they did and did not do under all the circumstances of the case."

On the contrary, it is contended:

"The jury was not called upon to pass upon the question of the negligence vel non of Mrs. Julia Sellers, Mrs. Coma Sellers, and A. G. Sellers, but to only find facts in answer to special issues, from which the court could determine whether they were guilty of, or free from, contributory negligence. It would have been out of place, therefore, for the court to have given the special charge in question, telling them under what circumstances they would be justified in finding them not guilty of negligence or contributory negligence."

It is further contended that it was not error to refuse the special charge in question, for the further reason that the case was submitted to the jury on special issues, and among them was one calling for a fact finding bearing upon the question of the contributory negligence of R. L. Robinson, the driver of the automobile, separately from others, calling for fact findings bearing upon the issue of the contributory negligence of the other occupants; and there was nothing in any of the special issues or the charge as a whole to lead the jury to believe that they should find facts establishing the contributory negligence of such other occupants simply because they believed that Robinson, the driver of the car, was himself guilty of contributory negligence.

If the jury had found facts, which they did not do, from which the court would have been justified in finding, based thereon, that the defendant was guilty of negligence in failing to have the car equipped with a 30-pound bell and a steam whistle, nevertheless plaintiffs would not have been entitled to a recovery, because of the finding of the jury that the occupants of the car were guilty of contributory negligence. In this connection, attention is called to recitals in the judgment, namely:

"It is the opinion of the court that the issue of defendant's negligence as a proximate cause of the injuries and damages for which plaintiffs in said cause sue, and the issue of defendant's liability therefor, were, by said verdict, resolved in favor of the defendant, and that the issue of plaintiffs' contributory negligence was by said verdict resolved against the plaintiffs," etc.

There was no error shown to have been committed by the court in the matter complained of, and therefore the assignment is overruled.

[6, 7] The fifth assignment complains:

"The court erred in requiring the jury to return the verdict herein, under the circumstances he did, as shown in the special instructions to that effect. The jury had reported on one occasion, and probably on two occasions, that they could not agree on a verdict, and asked to be discharged. The court, after retiring the jury upon such report or reports with instructions to further consider of their verdict, and after the jury had been out about 24 hours, consulted counsel for plaintiffs and defendant with a view to having the jury return a verdict as to the special issues upon which they could agree. Counsel for plaintiffs objected to that course being taken, and, upon being shown the court's special instructions, objected to the same being read to the jury, or to the jury being required to return a verdict as therein directed, or any verdict other than one disposing of the material issues submitted to them in the court's main charge; but the court called the jury before him and read to them the said instructions, and the jury thereafter returned the verdict, which shows that the jury could not and did not agree on the issues material to the defendant's defense. The verdict is too incomplete to form the basis of a judgment, and shows to have been the result of insufficient deliberation, due to the court requiring them to return a verdict at the time he did, or to irreconcilable differences, and in either case ought to be set aside."

This assignment is submitted as a proposition. The sixth assignment will be also considered in this connection, and is as follows:

"The court erred in receiving the verdict of the jury, because incomplete and insufficient to support a judgment, in that it wholly failed to dispose of the issues material to the plaintiffs' cause of action, and the defendant's defense, and should have discharged the jury and declared a mistrial."

The proposition under this assignment is:

"It goes without saying that a verdict which does not dispose of the material issues of a case is no verdict at all. In this case the jury disagreed as to two of the special issues, an affirmative finding of either of which would have entitled plaintiffs to a judgment; and they disagreed as to every issue presenting to them the question of contributory negligence. Plaintiffs were entitled to have every one of their grounds of negligence passed upon, and they could not be denied judgment because of contributory negligence on the part of those in whose right they sued in the absence of the issues presenting the question of their contributory negligence being passed upon by the jury, which in every instance it failed to do."

It was agreed that the following should be in the record:

"It is agreed between the counsel for plaintiffs and defendant that the following is a true copy of the charge read to the jury in response to which they returned the verdict found in the record, and which, by oversight, was omitted by the clerk in making up the record in this case,

the same to be considered as though copied in the record:

" 'Gentlemen of the Jury: You having been considering of your verdict approximately 24 hours, and having now reported to the court that you have been unable to agree upon a verdict on all the special issues submitted to you, and that there is no reasonable probability of your agreeing thereon, I do now instruct you to retire to the jury room and determine whether you can agree upon verdict 'on any of the special issues submitted to you. If you can agree upon some of such issues or questions, and cannot agree upon verdict upon others, then, in such event, you will write your answer to each of the special issues to which you agree upon verdict; and to such as you do not agree to a verdict upon, you will write. "We cannot agree." Having done this, you will return same into court.' "

It is argued that it was not an abuse of the power or discretion of the court to require the jury, after they had been deliberating some 24 hours, to return a verdict on such of the special issues as they could agree upon, for the reason that it was within the power of the court, after inspecting the answers, to declare a mistrial in case the answers returned were not of such nature as the court could therefrom render judgment for either party; but if the answers so returned were such that the court could determine therefrom that the occupants of the car were guilty of contributory negligence, precluding a recovery, then it was immaterial whether the jury answered the special issues bearing upon the defendant's negligence, for had they answered such questions, and in so doing had found facts justifying the court in concluding that the defendant had been guilty of negligence, the judgment, nevertheless, must have been for defendant. And it is further contended that the jury answered a sufficient number of special issues to enable the court to declare the legal effect thereof to be that the occupants of the automobile were guilty of contributory negligence, and, that being true, the failure of the jury to answer questions bearing upon the negligence of the defendant became wholly immaterial, for the judgment must have been against the plaintiffs, even if the jury had found that the defendant was negligent.

The following questions were answered by the jury in the affirmative:

(a) That the motorcar was provided with a gong sufficient to give reasonable warning to parties using or about to use the said crossing of the approach of the motorcar thereto.

(b) That the motorcar was provided with a whistle sufficient to give reasonable warning to parties using or about to use the said crossing of the approach of the motorcar thereto.

(c) That the motorman sounded the whistle and gong at such a distance from the crossing as to give reasonable notice to parties using or about to use the crossing of the approach of the motorcar thereto.

(d) That the motorman saw the automobile and those in the automobile, and realized that those in the automobile were exposed to the peril of being killed or injured in a collision between the motorcar and automobile.

(e) That the motorman did not see the automobile and those in the automobile and realize their peril in time, by the use of the means at his command, to have so slackened the speed of the motorcar as to have lessened the injury of those in the automobile, or to give them such warning as would have enabled them to have avoided contact with the motorcar.

(f) That R. L. Robinson controlled the running of the automobile.

(g) That the deceased, A. G. Sellers, did not exercise any control over the running of the automobile, and that Mrs. Coma Sellers did not exercise any control over the running of the automobile, and that A. G. Sellers, Mrs. Julia Sellers, and Mrs. Coma Sellers were guests of R. L. Robinson, the driver of the automobile.

(h) That R. L. Robinson, the driver of the car, was warned of the approach of the motorcar to the crossing in time to have stopped the automobile before he reached the crossing.

(i) That the plaintiffs Mrs. Julia Sellers, Mrs. Coma Sellers, and the deceased, A. G. Sellers, were warned by the ringing of the bell that a motorcar or cars were approaching the crossing in time to have caused the driver, R. L. Robinson, by warning or notifying him to have stopped the automobile before it reached the crossing.

(j) That Mrs. Julia Sellers, Mrs. Coma Sellers, and A. G. Sellers did hear the crossing bell, notifying the occupants of the automobile of the approach of the motorcar in time to have notified R. L. Robinson, the driver of the car, of the approach of said motorcar to the crossing in time for him to have stopped his automobile before said motorcar reached the crossing.

(k) That the plaintiffs Mrs. Julia Sellers, Mrs. Coma Sellers, and A. G. Sellers, deceased, could have seen the approach of the motorcar to the crossing a distance of 470 feet west of the crossing, when the automobile was within 75 to 100 feet of the crossing.

(l) That R. L. Robinson and the other occupants of said car, by the exercise of ordinary care on their part, could have discovered the approach of said motorcar after hearing the crossing signal, in time for the car to have been stopped and the accident prevented.

(m) That the occupants of the automobile, before starting out on the journey to La

Porte or Sylvan Beach, agreed to go to said place in the automobile of R. L. Robinson, for the purpose of jointly attending a picnic.

The following recital is found in the judgment, in this case:

" * * * Retired to consider of their verdict, and after due consideration thereon, on this the 18th day of May, A. D. 1917, returned into open court their verdict on the special issues submitted by the court, which verdict of the jury was received by the court and filed by order of the court; thereupon came on to be heard defendant's motion to enter judgment in each of said causes for the defendant, and the same having been heard and considered, it is the opinion of the court that the issue of defendant's negligence as a proximate cause of the injuries and damages for which the plaintiffs in said causes sue, and the issue of defendant's liability therefor, were, by the said verdict, resolved in favor of the defendant, and that the issue of plaintiffs' contributory negligence was by the said verdict resolved against the plaintiffs, and that the defendant in each of said causes is entitled to a judgment to be entered on said special issues in its favor. It is therefore * * * "

We call attention to the cases of Coons v. Lain, 168 S. W. 981; Sears v. Sears, 45 Tex. 557; O'Brien v. Hilburn, 22 Tex. 616; Kelley v. Ward, 94 Tex. 289, 60 S. W. 311.

A careful reading of the record will show that, had the jury returned answers to all the questions propounded upon the issue of the defendant's negligence, the judgment nevertheless must have been for the defendant because of the findings which justified the court in concluding that the occupants of the automobile were guilty of contributory negligence; and we will say that had the jury answered every question propounded upon the issue of defendant's negligence, and in so doing had answered (1) that the motorman, in approaching the crossing in question, ran at a great and excessive speed, without having his car under the control that an ordinarily prudent man should have had, and was negligent in operating the car at such speed; (2) that in approaching the crossing, the motorman did not keep a lookout for persons upon or about to enter upon the crossing that a man of ordinary prudence would have done under similar circumstances, and that such failure was negligence; and yet have found, as they did find, facts from which the court could pronounce the occupants of the automobile guilty of contributory negligence—such affirmative findings of negligence upon the part of the defendant would not overcome the findings of contributory negligence upon the part of the occupants of the car and justify a judgment in their favor. To state the proposition is to answer it, in view of the well-known rule of law above referred to, that contributory negligence of a plaintiff absolutely bars a recovery. The term "contributory" is a relative term, signifying that there was negligence upon the part of both parties; hence there can be no contributory negligence upon the part of the plaintiff, in the absence of negligence upon the part of the defendant.

In our opinion, the only issues material to the plaintiffs' cause of action that was submitted to the jury and not answered were embraced in paragraphs I and II of the court's charge. All the other issues which the jury failed to answer were material to the defendant's defense; and the failure of the jury to answer them, while it might, under different circumstances, have afforded ground for defendant's complaint, is a matter with which the plaintiffs are in no way concerned.

The jury found, in answer to special issues bearing upon the contributory negligence of the occupants of the automobile:

"That the plaintiffs Mrs. Julia Sellers, Mrs. Coma Sellers, and the deceased, A. G. Sellers, were warned by the ringing of the bell that a motorcar or cars were approaching the crossing in time to have caused the driver, R. L. Robinson, by warning or notifying him, to have stopped the automobile before it reached the crossing; that Mrs. Julia Sellers, Mrs. Coma Sellers, and A. G. Sellers did hear the crossing bell, notifying the occupants of the automobile of the approach of the motorcar in time to have notified R. L. Robinson, the driver of the car, of the approach of said motorcar to the crossing in time for him to have stopped his automobile before said motorcar reached the crossing; that the plaintiffs Mrs. Julia Sellers, Mrs. Coma Sellers, and A. G. Sellers, deceased, could have seen the approach of the motorcar to the crossing a distance of 470 feet west of the crossing, when the automobile was within 75 to 100 feet of the crossing; that R. L. Robinson and the other occupants of said car, by the exercise of ordinary care on their part, could have discovered the approach of said motorcar, after hearing the crossing signal, in time for the car to have been stopped and the accident prevented."

It is the opinion of the court that no judgment other than the one rendered for the defendant could properly have been rendered, in view of these findings, and the assignments are therefore overruled.

Having carefully considered and overruled the remaining assignments in appellants' brief, in our mind we cannot doubt that the court was warranted in entering the judgment as above set out; and, upon a careful consideration, we find no error in the action of the court in the matters complained of, and therefore the judgment of the court below is affirmed.