**BIG SIX OIL CO., Inc., v. WEST et al.**

**No. 14017.**

Court of Civil Appeals of Texas.
Fort Worth.

Jan. 26, 1940.

Rehearing Denied Feb. 23, 1940.

Bowyer, Gray, Thomas & Jaffe, of Dallas, for appellant.

H. C. McClure, of Jacksboro, Marshall & King, of Graham, and Ritchie & Ritchie, of Mineral Wells, for appellees.

BROWN, Justice.

Appellant, Big Six Oil Company, Inc., made a contract with appellee, J. F. West, the pertinent portions being:

"Whereas, the Big Six Oil Company, Inc. is the owner of an oil and gas lease on land in Jack County, Texas, situated near the town of Bryson, and J. F. West is the owner of a spudder and equipment.

"And, Whereas, Big Six Oil Company, Inc. desires to employ J. F. West to clean out wells which it owns in the Bryson area. Now, therefore, it is agreed between the parties: 1. That J. F. West will move his rig from the Hawley Pool in Jones County, Texas, to the property of the Big Six Oil Company, Inc., near Bryson, in Jack County, Texas, and will clean such oil wells as the Big Six Oil Company, Inc. may designate in a good, workmanlike manner, and without unnecessary delay, for a consideration of Seventy ($70.00) Dollars for each sixteen hours of work, it being understood that all expenses in connection with such work shall be paid by J. F. West. 2. After J. F. West has cleaned out one or two such wells and such work is satisfactory to the Big Six Oil Company, Inc., it will designate other wells to be cleaned out on the same basis."

West cleaned out one well on the lease known as L. W. Fields and one on the lease known as E. F. Smith.

The "Fields Lease" covers 30 acres and is a part of the J. P. Kittrell Survey, abstract 2205, and the "Smith Lease" covers 65 acres and is a part of the S. P. R. R. Co. Survey No. 1, abstract 552; all in Jack County, Texas. These leases were introduced in evidence. Big Six Oil Company, Inc., also owned a lease known as the "Clayton Lease", which covers 76½ acres, a part of the Lewis Knight Survey, in said county.

After West did the work of cleaning the said two wells and was not paid for same, he made out an itemized statement, showing what was claimed to be due him from appellant, Big Six Oil Company, Inc., for the cleaning of each of said wells, and filed such accounts, properly verified, with the County Clerk of Jack County, under the authority and right given by the provisions of Article 5473, Vernon's Anno.Texas Civil Statutes, and thereafter brought suit on his accounts and prayed for a foreclosure of the statutory lien thus given him, not only on the two above named leases, on

each of which one well was located, but prayed for a foreclosure of his said lien on all leases in Jack County owned by said oil company.

The itemized accounts were prepared, showing exactly what was claimed to be owing for the services performed on each separate lease.

Said Oil Company filed a separate suit against Southwestern Glycerine Company, Inc., and J. F. West and J. H. West, in which cause it was alleged that the Oil Company had employed the said Wests to clean out the wells owned by it and that during the process of cleaning out one certain well on the Smith Lease (same being a different well from that designated in West's suit against it), it became necessary to shoot the well with nitroglycerine, and that the Oil Company employed said Southwestern Glycerine Company to shoot the well. It is alleged that the said "Glycerine Company" and the Wests were guilty of negligence in shooting the well and the well was destroyed. The Oil Company moved to consolidate the two causes and the motion having been granted, the Oil Company filed an answer and cross-action in which it was alleged that the three said defendants (in the cross-action) were guilty of a number of acts of negligence, which resulted in the destruction of the oil well. The Wests answered, denying that J. H. West had any connection with the subject matter; denying all allegations in the Oil Company's cross-petition, and specifically charging the Oil Company with contributory negligence. They also pleaded that the accident which destroyed the well was unavoidable.

The case was tried to a jury and the following findings were made in answer to the many special issues submitted: (1) That J. F. West did the work of cleaning the two wells on the Smith and Fields leases under his said contract, (2) that West earned $2,978.50 (the exact amount he sued for) in doing the work, (3) that J. F. West was not the agent of his father, J. H. West, (4) that the Wests were not partners, (5) that the work of cleaning the wells was done in a workmanlike manner, (6) that on the morning that the Smith well (which was destroyed) was shot with nitroglycerine, it was clean and ready to shoot, (7) not answered, (8) that the act of Harold West in advising T. G. Patterson (employee of the Glycerine Company) that the well was clean and ready to shoot was not negligence, (9) and not a proximate cause of the damage done the well, (10) Harold West was not negligent in not swabbing the well, after it began to flow, (11) that such negligence was not a proximate cause of the damage done the well, (12) that J. F. West did not fail to provide sufficient tools with which to swab the well, (13) that such failure was not negligence, (14) that such negligence was not a proximate cause of the damage done the well, (15) that Chas. H. Kadane, a representative of the Big Six Oil Company, did not instruct the employees of J. F. West that no attempt should be made to shoot the well until he (Kadane) was present, (16) that West and his employees were not negligent in permitting the shooter, Patterson, to attempt to shoot the well, (17) that such negligence was not a proximate cause of the damage done to the well, (18) that Patterson was not negligent in attempting to shoot the well without having it swabbed, (19) that such negligence was not the proximate cause of the damage done the well, (20) that Patterson was not negligent in attempting to shoot the well after it began to flow oil, (21) that such negligence was not a proximate cause of the damage done the well, (22) that Patterson was not negligent in attempting to shoot the well when a. representative of the Oil Company was not present, (23) that such negligence was not a proximate cause of the damage done the well, (24) that Patterson was not negligent in the manner in which he handled the line, in lowering the nitroglycerine into the well, (25) that such negligence was not a proximae cause of the damage done the well, (26) that Patterson was not guilty of negligence in not removing the nitroglycerine from the well after it began to flow, (27) that such negligence was not a proximate cause of the damage done the well, (28) the reasonable cash market value of the well immediately prior to the injury was $12,000, and (29) that immediately after the injury, was $1,275, (30) the value of the salvage from the destroyed well was $1,275, (31) the reasonable cost of drilling and casing a well in the Bryson area, similar to the one destroyed, is $11,000, (32) that Charles H. Kadane, through his instructions and actions, prevented the well from being swabbed, (33) his act was contributory negligence, (34) and a proximate cause of the damage done, (35) that the Oil Company did not allow the shooter to use his own discretion as to the status of the well, (36)

that same was an act of contributory negligence, and (37) was a proximate cause of the damage, (38) that the Oil Company, acting by and through Charles H. Kadane, required the well to be shot without swabbing with what is known as the Large Tool, (39) this act was negligence, and (40) a proximate cause of the damage done, (41) that Chas. H. Kadane directed the manner in which the well should be cleaned, in order to place explosives in it, (42) that his act was contributory negligence, and (43) a proximate cause of the damage done the well, (44) that said Kadane required the well in question to be shot in the same way and manner as was done in a previous well, (45) this act was contributory negligence, and (46) a proximate cause of the damage done the well. On another Special Issue No. 1, the jury found that the accident was unavoidable.

On this verdict, the trial court rendered judgment for West, in the sum of $2,978.-50, against Big Six Oil Company, Inc., and decreed a foreclosure of West's statutory lien as against the Fields Lease, the Smith Lease and the Clayton Lease, being all of the oil leases owned by said Oil Company in Jack County, and ordered said leases sold through a proper writ to satisfy the judgment. The judgment also finds for the cross-defendants on the Oil Company's cross-action. The Oil Company has appealed.

We find twenty-five assignments of error in the brief, and eight propositions. There is no notation made attempting to show what assignments of error are presented through the eight propositions, and we will discuss the propositions only.

The first proposition asserts that the written contract does not purport to give West a lien on any particular tract of land and that it was error for the trial court to attempt to fix a lien on the Clayton Lease.

We believe that the contention is well taken, and we go further and announce that our construction of Article 5473 (R.C.S.) is that the lien provided for therein attaches only to the particular lease on which the particular work was done and the material, etc., furnished, and that such lien attaches only to secure the value of such labor, materials, etc., done and furnished on that particular lease.

In this case the trial court finds the lump sum due West for the labor, materials, etc., used on both wells, located on two separate leases, and attempts to fix a lien on both leases to secure the lump sum and goes further and attempts to fix a lien on a lease on which no labor was done and no materials, etc., furnished. This the court could not do.

The Statute expressly gives the lien "on the whole of such land or leasehold interest therein, * * * and upon said oil well, gas well * * * for which the same are furnished or hauled, and upon all of the other oil wells, gas wells, buildings and appurtenances, including pipe line, leasehold interest, and land used in operating for oil, gas and other minerals, upon such leasehold or land * * * for which said material and supplies were furnished * * * or labor performed."

We think the provisions of the Statute plain.

Fortunately, appellee West has itemized his account as it covers each one of the wells, and attached his accounts as an exhibit to his petition, and he testified to the amounts as shown being correct, and the jury found that the Oil Company owed him the exact amount shown by his item-ized statements. This being true, we are able to reform and affirm the judgment on West's cause of action against Big Six Oil Company, Inc.

The judgment of the trial court is here reformed so as to give appellee West a judgment against appellant, Big Six Oil Company, Inc., for $1,452.50, together with a foreclosure of West's lien on the "Fields Lease", and a judgment for $1,526, together with a foreclosure of West's lien on the "Smith Lease", and that such judgment bear interest from March 27th, 1939, the date of entry of such judgment, at the rate of six per cent per annum.

We believe that the Supreme Court, in Guaranty Savings Loan & Investment Co. et al. v. Cash, 99 Tex. 555, 91 S.W. 781, supports our construction of the statute before us.

We now come to the propositions which have to do with the trial of the case on the cross-action filed by Big Six Oil Company, Inc., against the two Wests and the Southwestern Glycerine Company, because of the destruction of a certain well when it was "shot".

Proposition No. 2 asserts that the findings by the jury that the acts of Charles H. Kadane constituted "contributory negli-

954

gence" proximately causing the damage done to the well are in direct conflict with the further finding that the accident was unavoidable.

It appears that we have a case here which is wholly unlike any case cited by appellant to support his proposition.

In order for appellant to recover upon his cross-action, it must be made to appear that West and the Glycerine Company were guilty of some act of negligence which proximately caused the damage done appellant's well.

The jury acquitted these parties of all acts of negligence with which they were charged. This was a complete defense to appellant's suit.

If the jury had returned their verdict to the trial court with such findings and had advised the trial court that they were unable to answer any of the issues which inquired about appellant's contributory negligence, and that they were unable to answer the question touching an unavoidable accident, nevertheless, the trial court would have been compelled to give West and the Glycerine Company a judgment on such verdict.

That being true, what comfort can appellant get out of the fact that insofar as the issues touching upon its contributory negligence are concerned, the jury found it guilty of contributory negligence and at the same time found that the accident was unavoidable?

The conflict is merely one dealing with issues that are wholly immaterial to the plain and understandable findings which preclude appellant from recovering on its cross-action.

It is obvious that the jury having absolved West and the Glycerine Company from all acts of negligence, on which appellant relied for a recovery, it matters not how the jury may have answered the issues inquiring into the alleged acts of contributory negligence on the part of appellant, or the issue on the question of the accident being unavoidable.

Whatever conflict there is, is wholly immaterial in the light of the plain findings which required a judgment for appellees.

Mr. Chief Justice Hickman, speaking for the Eastland Court of Civil Appeals, in Lanius et al. v. Panhandle & S. F. Ry. Co., 7 S.W.2d 1099, 1100, discusses such a situation as is presented to us here, and he cites a number of Texas authorities which support the opinion. He said: "It is our opinion that the finding by the jury that appellants' employees were guilty of contributory negligence renders it immaterial that the findings were conflicting on the question of whether the negligence of appellee's servants was the proximate cause of the damages. Appellee was entitled to judgment on the answer to special issue No. 3, regardless of the answers to other issues, and even if no other issue had been answered by the jury. Yoes v. Texas & P. Ry. Co. (Tex.Civ.App.) 211 S.W. 311 (error refused); Sellers v. Galveston, H. & S. A. Ry. Co. (Tex.Civ.App.) 208 S.W. 397 (error refused); Lancaster & Wallace v. Gonzales (Tex.Com.App.) 287 S.W. 1094; Alexander v. Missouri, K. & T. Railway (Tex.Civ.App.) 287 S.W. 153 (writ dismissed); Miller v. Estep et al. [Tex.Civ. App.], 5 S.W.(2d) 876 (writ dismissed)."

In the case under discussion, the jury had found the defendant's employees guilty of negligence proximately causing the plaintiff's damage, and by issue No. 3 (referred to in the opinion), had found that plaintiff's employees were guilty of contributory negligence.

We believe that a conflict which destroys the verdict must be one where one of the conflicting findings would warrant a judgment for one of the parties and the other conflicting finding would warrant a judgment for the other party.

No such situation appears in the instant suit. The jury having found that the cross-defendants were not guilty of any act of negligence, they were entitled to judgment relieving them of all responsibility for the loss of the well, and no answer that the jury could return to issues predicated upon cross-plaintiff's contributory negligence or upon the issue of unavoidable accident could possibly conflict with the findings made in favor of cross-defendants. Allen v. Texas & N. O. R. Co., Tex. Civ.App., 70 S.W.2d 758, writ dismissed; Millers' Ind. Underwriters v. Schrieber, Tex.Civ.App., 240 S.W. 963, writ refused; Ford Rent Co. v. Hughes, Tex.Civ.App., 90 S.W.2d 290.

By proposition No. 3, appellant contends that the trial court having instructed the jury that contributory negligence is such act or omission on the part of the complaining party amounting to a want of ordinary care, which concurring or cooperating with some negligent act or omission of the oth-

er party, is a proximate cause of the injury, and the jury having found in answer to issues Nos. 6 to 27 that appellees were not negligent in any particular, and then found in answer to issues Nos. 32 to 46, that appellant was guilty of contributory negligence, there is such a conflict in the findings as that they nullify one another, and cannot form the basis of a judgment.

Appellant cites Ripley v. Dozier Const. Co., Tex.Civ.App., 45 S.W.2d 661, 662, but we are of opinion that the decision cited is not helpful to appellant. The following language is found in the opinion: "Appellant presents five propositions, but they may all be reduced to one contention to the effect that contributory negligence cannot exist in the absence of primary negligence, and, since the jury failed to agree upon and left unanswered the issues submitting primary negligence, there was no basis for the finding of contributory negligence in the answers to special issues 4, 5 and 6. Technically speaking, this contention is correct. However, negligence on plaintiff's part which was a proximate cause of the injury would constitute a complete bar to recovery, regardless of the existence vel non of primary actionable negligence. It would be immaterial which way the jury answered the issues submitting primary negligence. Had the answer been 'No,' plaintiff must necessarily fail, regardless of the finding on his own negligence. Had the answer been 'Yes,' he must likewise fail because of his own negligence. The jury having disagreed upon primary negligence, it follows that some must have held for an affirmative and others for a negative answer. *If a unanimous answer either way could not, in view of other answers, have affected the result, then we are unable to see how the failure to answer could have any bearing on the case.* [Italics ours]. * * * We are not dealing with a necessarily joint act in which the part played by each is essential to the existence of a single whole, but with two separate and distinct acts the existence of one of which, with or without the concurrence of the other, establishes the existence of the whole. *In such case, the only essential is a finding of the existence of the independent act. Its designation as concurrent or contributory is immaterial and may be disregarded as surplusage.*" (Italics ours).

So, in the case at bar, the finding that cross-defendants were guilty of no act of negligence is a complete bar to cross-plaintiff's recovery, regardless of the existence vel non of any act of contributory negligence on the part of cross-plaintiff, or of the finding that the accident was unavoidable.

We have considered the remaining propositions Nos. 4, 5, 6, 7 and 8, and the assignments of error on which they are bottomed, and find no reversible error presented.

All assignments of error presented in the brief are overruled, and the judgment is reformed and affirmed, as indicated supra.

The costs of appeal are taxed against appellee J. F. West.