# Louisville & Nashville Railroad Co. v. Anchors, Admr.

*Action against a Railroad Company by Administrator of Deceased Employé to recover Damages for Intestate's Death.*

1. *Wilfull injury; wanton negligence; definition thereof.*—To constitute willful injury there must be a design, purpose or intent to do wrong and inflict the injury; while to constitute wanton negligence, there must be a consciousness on the part of the person from his knowledge of existing circumstances and conditions that his conduct will probably result in injury, and yet, with reckless indifference or disregard of the natural or probable consequences, but without having the intent to injure, he does the act or fails to act.

2. *Same sufficiency of complaint.*—In an action against a railroad company by the administrator of a deceased employé to recover dam-

ages, a count in the complaint which avers that the defendant's engineer, who had control of the running of the locomotive, "wrongfully and willfully failed to blow the whistle or ring the bell," as required by law, and "because of such willfulness and wantoness the said passenger train of the defendant ran into and against the passenger car" of another line upon which the plaintiff was the conductor, thereby causing the injuries complained of, is defective as a count charging willful injury, in that it does not show the purpose of the defendant in failing to ring the bell or blow the whistle was to run into the passenger car of the other line; nor does such a complaint charge wanton negligence in that it does not aver a state of facts from which knowledge can be imputed to the defendant that the natural and probable consequences of his conduct would result in the collision.

3. *Same; same.*—In such a case, a count in the complaint which charges that "the conductor and engineer on said defendant's train were willfully and. negligently running defendant's said train at a greater rate of speed" than was allowed by law, and "by reason of such speed they willfully and negligently ran into. and against the car on which plaintiff's intestate was the conductor," causing the injuries complained of, is defective as a count for willful injury or wanton negligence, in that it does not aver that the intention or purpose of running the train at the high speed was to inflict the injury, nor does it aver facts which show that the defendant knew that the probable result of such conduct would be to inflict injury.

4. *Same; same.*—In such a case, a count which charges that the defendant "willfully caused the locomotive and train to run into and against a passenger car" upon which plaintiff's intestate was conductor, from which collision the injury complained of resulted, sufficiently charges willful injury.

5. *Negligence; sufficiency of complaint as charging simple negligence.*—In such a case, a count which charges that the "engineer negligently permitted and suffered the locomotive and train to run into a passenger car" on which plaintiff's intestate was conductor, whereby the injuries complained of resulted, if sufficient as a count for simple negligence.

6. *Same; reckless as applied to negligence.*—The word "reckless" in a complaint, as qualifying negligence, without the explanatory averments, *per se* has no legal signification that imposes other than simple negligence and a want of due care; but when used in connection with the averment of facts to which it refers and explains, may imply more than heedlessness or negligence.

7. *Railroads; applicability of statute regulating running thereof to electric roads.*—An electric car line, running between two cities and beyond the corporate limits of each, is a railroad within the meaning of section 1145 of the Code of 1886, regulating the duty of railroads whose tracks cross each other.

APPEAL from the City Court of Anniston.

Tried before the Hon. JAMES W. LAPSLEY.

This action was brought by the appellee, Hannah Anchors, as administratrix of the estate of J. F. Anchors, deceased, against the Louisville & Nashville Railroad Company.

The complaint contained ten counts. The first count of the complaint was as follows : ''The plaintiff claims of the defendant the sum of twenty-five thousand dollars, for that, heretofore, towit, on the 4th day of July, 1896, the defendant was a railroad company and a common carrier, operating a railroad which passed through the city of Anniston, and in passing through said city it ran over and across Eleventh Street, a public street in said city ; that running along Eleventh Street is an electric car line called the Oxford Lake Line, which runs from Anniston to Oxford Lake, a point four miles distant from Anniston, within Calhoun county, and beyond the corporate limits of any town, city or village ; that the said Oxford Lake Line is engaged in the business of transporting freight and passengers between Anniston, Oxford and intermediate points ; that on the night of the said July 4th, the defendant company was running and moving a passenger train drawn by a steam locomotive over its said line, and passing through said city and along and across the said Eleventh Street, and across the track of the said Lake Line ; that Anniston is a regular station or stopping place on the line of the defendant's said railroad ; that the crossing of the defendant's said line with that of the Oxford Lake Line on Eleventh Street is more than a half mile in every direction from and within the corporate limits of Anniston, and is within a quarter of a mile of the regular station or stopping place on the line of the defendant's railroad ; that the ordinances of the city of Anniston provide that no person shall run or cause to be run any car, engine or railroad train within the corporate limits of the city of Anniston faster than six miles per hour, or run any railroad train, car or engine over any street crossing within the corporate limits of said city without continually ringing a bell over and between said crossing. And plaintiff avers that the said defendant, in running its said passenger train at the time and place as aforesaid, ran into and collided with a passenger car of said

Lake Line at the place where its railroad crosses the railroad of defendant, knocked the passenger car of said Lake Line off the track, and struck and killed plaintiff's intestate, who was the conductor on the said car of the Oxford Lake Line, (while the said car was running along the track of the said Oxford Lake Line's railroad) ; that the death of the plaintiff's intestate was caused by the negligence of defendant in this, that, 1st. Robert Wallace, defendant's engineer on said passenger train, failed to blow the whistle or ring the bell at least one-quarter of a mile before reaching said crossing with Eleventh Street, and in failing to continue to blow the whistle or ring his bell at short intervals until said train had passed said crossing. 2d. Said Wallace failed to ring his bell or blow his whistle at least one-quarter of a mile from the regular station or stopping place of said defendant's trains at Anniston, and in failing to continue said ringing or blowing at short intervals until such station or stopping place was reached. 3d. Said Wallace failed to ring his bell at short intervals while moving within the corporate limits of the city of Anniston. 4th. Said Wallace and one Hiram Meigs, who was defendant's conductor on said passenger train, ran or caused to be run the said train of defendant in the corporate limits of the city of Anniston, at a greater rate of speed than six miles per hour, and without continually ringing the bell within the said corporate limits of Anniston, and while running over and between the crossing of said Eleventh Street with defendant's railroad, by reason of all which negligence on the part of defendant, plaintiff was damaged in the said sum of twenty-five thousand dollars." The 3, 4, 5, 7, 8 and 9 counts of the complaint charge the defendant with simple negligence, while the 2d, 6th and 10th counts sought to allege that the injury was willfully inflicted, or resulted from such wanton negligence as to be equivalent of a willful wrong.

The second count after averring the prefactory facts, substantially as contained in the first count, then continues as follows : "Defendant, through its conductor, Hiram Meigs, and engineer, Robert Wallace, wantonly, recklessly or willfully caused, permitted and suffered the said locomotive and train to run into and against a passenger car of which plaintiff's intestate was

conductor on said Oxford Lake Line, whereby plaintiff's intestate who was at his post of duty on said Oxford Lake Line's car, was knocked off said car and received such injuries that he died, to the damage of the plaintiff, as aforesaid," &c.

The allegations of the 10th count are sufficiently stated in the opinion. The 6th count was as follows: "Plaintiff claims of the defendant the other and further sum of twenty-five thousand dollars, as damages, for that heretofore, to-wit, on the fourth day of July, 1896, defendant was running and moving a passenger car over a line of railroad that it was operating in and beyond the corporate limits of Anniston, an incorporated town or city; that while the said passenger car was moving within said corporate limits, it ran into and against a passenger car of the Oxford Lake Line; that plaintiff's intestate was the conductor on said last named passenger car, that the ordinances of the city of Anniston prohibit any person from running or causing any railroad train, car or engine (to run) at a faster speed than six miles an hour; that defendant's agents and servants, Hiram Meigs and Robert Wallace, conductor and engineer on said defendant's train, were willfully or wantonly running defendant's said train at a greater rate of speed than six miles per hour, and by reason of such speed, they willfully or wantonly ran into and against the car on which plaintiff's intestate was the conductor, knocked the said car off its track and struck and killed plaintiff's intestate; plaintiff's intestate's death being caused by the said willfullness or wantonness in running said train of defendant's at such a high rate of speed, to the damage of the plaintiff in the sum of twenty-five thousand dollars."

To the 1st, 3d, 4th, 5th, 7th, 8th and 9th counts of the complaint, the defendant separately demurred upon the grounds: (1.) That they stated no cause of action. (2.) That it does not appear from said counts that the alleged negligence of the defendant was the proximate cause of the injury to plaintiff's intestate. (3.) That it does not appear from the facts alleged that the defendant was guilty of negligence.

To the 2, 6 and 10 counts of the complaint the defendant demurred upon the grounds: (1.) That they state no cause of action. (2.) That no sufficient facts are

stated to show that the plaintiff's intestate was injured by reason of the wanton, careless or willful negligence of the defendant or its agents. (3.) That the facts stated do not show that the defendant or its agents willfully or wantonly or negligenty caused the defendant's locomotive to strike the deceased or cause the injuries.

These demurrers were overruled by the court, and from the judgment overruling these demurrers, the defendant appeals, and assigns as error the rendition of such judgment.

JOHN B. KNOX, for appellant.—1. The counts in the complaint which seek to charge the appellant with gross or willful, wanton or intentional negligence, seems to be insufficient. The facts therein stated, if admitted, do not show a case of willful, wanton or intentional negligence, as defined by our decisions.—*Glass v. M. & C. R. R. Co.*, 94 Ala. 581; *Stringer v. Ala. Min. R. R. Co.*, 99 Ala. 397; *L. & N. R. R. Co. v. Markee*, 103 Ala. 160; *A. G. S. R. R. Co. v. Linn*, 103 Ala. 134.

2. The Oxford Lake Line and electric street railroad is not a street railroad within the meaning of section 1145 of the Code of 1886.—Code of 1886, § 1173.

3. In *Birmingham Min. R. R. Co. v. Jacobs*, 92 Ala. 187, this court held, that a railroad operated by steam and using what is ordinarily known as a dummy engine, was within the provisions of the statute above cited, and this decision was followed and reaffirmed in *Ensley Railway Co. v. Chewning*, 93 Ala. 24. To the same effect is the decisions of the Supreme Court of Tennessee in *Katzenberger v. Lawo*, 90 Tenn. 235, 16 S. W. Rep. 611.

But in referring to the exception in section 1173 of the Code of 1886, Mr. Justice COLEMAN, who delivered the opinion of the majority of the court, in the case of the *Birmingham Min. R. R. Co. v. Jacobs, supra*, says: "The only exception is that 'where it is clearly otherwise apparent from the context,' and we should say a horse car is not expected to carry a steam whistle and for obvious reasons would be clearly excepted." This remark is equally applicable to electric cars—nor do the latter have engineers or conductors within the meaning of section 1145. It would seem apparent from the view taken of this statute by the court in this case, that cars operated

32

by electricity are not within the letter or the spirit of the statute.

In *Highland Ave. & B. R. R. Co. v. Sampson*. 91 Ala. 560, Mr. Justice COLEMAN, again speaking for the court, says: "The court does not commit itself to the further proposition that all the statutory enactments of the Code, for the government and regulation of railroads, apply alike to dummy line railroads, as to other railroads."

CARTHELL & AGEE, *contra*.—1. We submit that the several counts of the complaint charging simple negligence on the part of the appellant, its servants and agents are as full in the allegations as are required by the decisions of this court. General averments of negligence are sufficient.—*L. & N. R. R. Co. v. Markee*, 103 Ala. 160.

2. The counts in the complaint which charge willfulness or wantonness in the infliction of the injury which caused the death of the appellee's intestate are as full as the rules of pleading require.—*Ga. Pac. Railway Co. v. Ross*, 100 Ala. 490; *Bir. Min. R. R. Co. v. Jacobs*, 92 Ala. 187.

3. The important question raised by the demurrers to the third count is whether or not it was the duty of the appellant to stop its train within one hundred feet of the crossing of its railroad with the railroad of the Oxford Lake Line as required by section 1145 of the Code of 1886. The city court overruled the demurrers to the said count holding in effect that sufficient facts were set forth in said count to show that the appellant owed to the appellee's intestate the duty to stop within one hundred feet of said crossing with the Oxford Lake Line on which he was conductor at the time of his death. We think that this question has been settled by this court and it is not longer *res integra*.—Code of 1886, §§ 1145, 1173, 1921; *Bir. Min. R. R. Co. v. Jacobs*, 92 Ala. 187; *Katzenberger v. Lawo*, 90 Tenn. 233; Elliott on Electric Roads, 557.

COLEMAN, J.—The defendant in error, as administratrix, sued to recover damages for an unlawful injury to J. F. Anchors, which resulted in his death. Each of the ten counts of the complaint were demurred to by the defendant, and there were several grounds of each of

the demurrers. The demurrer to the second, sixth and tenth counts raise the question as to whether these counts charge that the injury was willfully inflicted, or resulted from such wanton negligence as to be the equivalent of a willful wrong. The court overruled the demurrer which challenged the sufficiency of these counts in this respect. We are of opinion the pleader and the trial court misapprehended the nature of a willful injury or wanton negligence as defined by this court. In the case of *Ga. Pac. Railway Co. v. Lee*, 92 Ala. 262, it was said : "Willful and intentional wrong, a willingness to inflict injury, can not be imputed to one who is without consciousness, from whatever cause, that his conduct will inevitably or probably lead to wrong and injury." In the case of *Birmingham Railway & Electric Company v. Bowers*, 110 Ala. 328, we said : "To constitute willful injury, there must be design, purpose, intent to do wrong and inflict the injury." "In wanton negligence, the party doing the act, or failing to act, is conscious of his conduct and, without having the intent to injure, is conscious from his knowledge of existing circumstances and conditions, that his conduct will naturally or probably result in injury."—*L. & N. R. R. Co. v. Webb,* 97 Ala. 308 ; *Stringer v. Ala. Min. R. R. Co.*, 99 Ala. 397 ; *R. & D. R. R. Co. v. Vance*, 93 Ala. 149 ; *L. & N. R. R. Co. v. Richards,* 100 Ala. 365.

Apply these principles to the 10th count of the complaint. It avers that " defendant's engineer, Robert Wallace, who had control of the running of the locomotive that propelled said train, wantonly or willfully failed to blow the whistle, or ring the bell at least one-fourth of a mile before reaching the regular station or stopping place at Anniston, and said engineer wantonly or willfully failed to continue to ring the bell or blow the whistle at short intervals until he had reached the said stopping place, and *because of such* willfulness or wantonness, the said passenger train of the defendant ran into and against a passenger car of the Oxford Lake Line at its crossing," &c. Italics ours. Everything averred in this count might be true, and yet not show that the purpose of the defendant, in failing to ring the bell or blow the whistle, was to run into and against the passenger car of the Oxford Lake Line. As a count for willful injury it is defective. Nor does the count aver a

[Louisville & Nashville R. R. Co. v. Anchors, Adm'r.]

state of facts from which a knowledge could be imputed to defendant, that the natural and probable consequences of his conduct would result in a collision. If the count had averred that defendant willfully failed or refused to blow the whistle or ring the bell with the intent to commit the injury, or willfully refused to ring the bell, having a knowledge, that probably the Oxford Lake train at the time was at the crossing, and the natural or probable result of the willful omission would be to collide, the count would have been sufficient. It may be true that the injury resulted, "because of such willfulness" in failing to ring the bell, "or by reason of such speed" as averred in the sixth count, or "whereby" as averred in the second count, and yet the result may not have been within the design or purpose of the engineer of the defendant, nor done or omitted under such circumstances and conditions, which would charge him with a knowledge that the natural or probable consequences of his conduct would be to inflict injury. We would call attention to the use of the word "reckless" in the second count. In the case of the *K. C., M. & B. R. R. Co. v. Crocker*, 95 Ala. 412, 433, we considered and declared the distinction between the words "willful" and "reckless," and in the case of *Stringer v. Ala. Min. R. R. Co.*, 99 Ala. 397, we declared that the words "gross," "reckless" *per se*, "when applied to negligence, have no legal significance which import other than simple negligence or a want of due care." The use of the word "reckless" in connection with averments of facts to which it refers and explains, may imply more than mere heedlessness or negligence. The 4th count charges, that Robert Wallace "negligently * * * permitted and suffered the said locomotive and train to run into and against a passenger car." This averment is sufficient as a count for simple negligence. The legal effect would not be different, if the word "recklessly" had been substituted for the word "negligently" in this count.—*Ala. Gr. So. R. R. Co. v. Hall*, 105 Ala. 599.

Construing the 6th count, our opinion is, the latter clause gives meaning and controls the preceding averments, and construed as a whole charges no more than that the death of plaintiff's intestate resulted "by reason of" the willful running of said train at a high rate of speed, but does not aver, that the intention or purpose

in running the train was to inflict the injury, nor does it aver facts which show that defendant knew that the probable result of such conduct would be to inflict injury.—*Hall Case, supra.* The demurrer to the 6th and 10th counts should have been sustained. The second count charges that the . defendant " willfully caused the locomotive and train to run into and against a passenger car," &c. A similar averment was held sufficient to show a willful injury in the case of *Birmingham Min. R. R. v. Jacobs,* 92 Ala. 187. It may be that this count is objectionable in that it unites averments of simple neg-, ligence with averments showing a willful injury, but no objection was raised on this account, and the demurrer to it was properly overruled.—*L. & N. R. R. Co. v. Markee,* 103 Ala. 160.

Section 1145 of the Code of 1886 provides as follows : " When the tracks of two railroads cross each other, engineers and conductors must cause the trains of which they are in charge to come to a full stop within one hundred feet of such crossing, and not proceed until they know the way to be clear ; the train on the railroad having the older right of way being entitled to cross first." The demurrer raises the question as to whether " the railroad of the Oxford Lake Line, an electric railroad running from Anniston to a point beyond the corporate limits of the city, upon which the plaintiff's intestate was conductor," is a railroad within the meaning of said section 1145.

In the case of the *Birmingham Min. R. R. Co. v. Jacobs,* 92 Ala. 199, we had occasion to consider sections 1145 and 1173. The question in that case was, whether railroads using dummy engines and operated beyond city limits are subject to these provisions. After careful deliberation, this court reached the conclusion that railroad corporations organized under and by virtue of sections 1918 and 1921 of the Code of 1886, as amended by act of February 25th, 1887, (Acts, 1886–87, p. 144), were not strictly street railways, as contemplated in the statute providing for the organization and operation of street railroads, (sections 1603-1612 of the Code of 1886), and that railroads organized under the act of February 25th, *supra,* using dummy engines, were subject to said statutory provisions. The question now is, whether a railroad upon which electricity is used as the moving power,

[Corry, Adm'r. v. Jones *et al.*]

is a railroad within the provisions of the statute. The statute itself makes no distinction, and in considering the purposes intended in the adoption of these regulations, we are unable to see any good reason why persons travelling upon electric cars are not entitled to the same protection as those travelling upon cars propelled by steam. Public necessities even within city limits demand increased facilities for travel over the horse car, and many decisions of courts applicable to street railways operated by horses, could not be applied without manifest injustice to trains operated by steam or electricity. The speed, economy and convenience afforded by electricity commend its use even for commercial purposes as well as travel, as superior in some respects to any other motive power thus far applied. A railroad within the provisions of the statute, does not cease to be such railroad, because it may discontinue the use of steam, and substitute that of electricity. The change in the motor power may relieve it from some provisions of the statute, but those which are needful for the protection of life and property continue in force.—*Jacobs' Case, supra,* and authorities cited; *Birmingham Railway & Electric Co. v. Baylor,* 101 Ala. 498.

Reversed and remanded.