## Margaret Burns, Defendant in Error, v. Chicago & Alton Railroad Company, Plaintiff in Error.

1. EVIDENCE—*proof of ordinance limiting speed of trains.* An ordinance limiting the speed of trains is not proven under Cahill's Ill. St. ch. 24, ¶ 67, requiring publication of all ordinances in a newspaper published in the village, if there is one, and posting if there is no newspaper, and ¶ 68 making the clerk's certificate prima facie evidence of the ordinance and the date of its publication, by introduction of a book containing a copy of the purported ordinance, where the book was handed to the village clerk by a former village trustee and there is no evidence as to the history or whereabouts of the book before it came into the clerk's hands, and the clerk's certificate to the ordinance certified merely as to its passage and that it was posted in three public places but does not show that it was published or whether or not there was a newspaper published in the village.

2. APPEAL AND ERROR—*insufficiency of general answer to assignments of error in ruling on evidence.* Assignments of error in rulings on evidence are not sufficiently met by a suggestion that the record is voluminous, the evidence but briefly abstracted, and that specification in responding to them will be laborious, but that the

reviewing court, by inspecting the record, will find that the questions to which objections were sustained had been answered in various ways earlier in the trial, since the proper practice, if the abstract is deficient, is to file a supplemental abstract pointing out the answers with particularity.

3. RAILROADS—*pleading wilful and wanton injury in grade-crossing accident.* A railroad company is not charged with wilful and wanton injury of plaintiff in a grade-crossing accident by an allegation charging general negligence committed wilfully and wantonly in operating its train across the grade crossing in question.

4. RAILROADS—*operation of train in violation of speed ordinance as wilful and wanton negligence.* Wilful and wanton injury of plaintiff in a grade-crossing accident is not charged by allegations of the existence of an ordinance of the village in question limiting the speed of trains therein to 10 miles an hour and that defendant railroad company, not regarding the ordinance and grossly neglecting its duty, recklessly, wilfully and wantonly drove its engine in excess of 10 miles an hour, to wit, 30 miles an hour, towards, upon and across said grade crossing.

5. RAILROADS—*pleading wilful and wanton injury from operation of train over grade crossing where view obstructed.* Wilful and wanton injury of plaintiff in a grade-crossing accident is not charged by a declaration which alleges the existence and location of defendant's tracks at the grade crossing in question and of numerous obstructions to the view of persons approaching the crossing on the highway, the existence of an ordinance limiting the speed of trains in the village to 10 miles an hour, the duty of the railroad to approach said crossing with its engines at a speed not exceeding ten miles an hour and to keep a proper lookout and its engine under proper control and to give due and necessary signals of warning of the approach of trains because of the dangerous condition of the crossing, and that defendant recklessly, wilfully and wantonly drove its said engine at an excessive rate of speed, to wit, 30 miles an hour, across such crossing without having the engine and train under control, and without having kept a sufficient lookout for users of the highway approaching the crossing and without giving any warning signals.

6. RAILROADS—*sufficiency of evidence of wilful and wanton injury of highway user at grade-crossing accident.* A charge that defendant railroad company wilfully and wantonly injured an automobilist in a grade-crossing accident, predicated on a general charge of negligence committed wilfully and wantonly, is not sustained by any evidence where it is shown that plaintiff was not seen by the locomotive driver and that he had no opportunity to see her or know that she was approaching or upon the crossing until the

engine was not more than 75 feet from the crossing, running at from 20 to 30 miles an hour.

7. RAILROADS—*when violation of speed ordinance not wilful and wanton misconduct.* A charge that defendant railroad company was guilty of wilful and wanton misconduct in injuring an automobilist in a grade-crossing collision while operating its train at a rate of speed in violation of a village speed ordinance is not supported by any evidence where there is no evidence tending to show wilfulness or wantonness except that showing violation of the speed ordinance in question.

8. RAILROADS—*when wilful and wanton misconduct in operating train over dangerous grade crossing not shown.* A charge of wilful and wanton misconduct of defendant railroad in injuring plaintiff in a grade-crossing accident, predicated upon allegations that the train in question was operated over a grade crossing where the view of approaching trains was obstructed to users of the highway at a rate of speed greatly in excess of that limited by a speed ordinance and without keeping any proper lookout for persons on the highway, and without having the engine under control and without giving any due and necessary signals of warning of the approach of the train to such crossing, is not supported by the evidence which shows that the engine whistle was sounded at a station not far distant from the crossing and again within three blocks of the crossing and again just before the crossing was reached and that the bell was ringing continuously from a point 3,000 feet distant until the crossing was reached.

9. RAILROADS—*when instruction charging railroad with wilful and wanton misconduct is erroneous.* It is reversible error to instruct the jury, in a personal injuries action growing out of a grade-crossing collision between a train and an automobile driven by plaintiff, to find defendant guilty if they find from the evidence that plaintiff was injured by the wilful and wanton misconduct of defendant even though they believe that plaintiff was not in the exercise of due care for her own safety, where the declaration is insufficient to charge wilful and wanton misconduct and there is no evidence tending to show any intention on the part of defendant or its servants to injure plaintiff or any wilful and wanton disregard for her life and safety from which such intention might reasonably be inferred.

10. RAILROADS—*when contributory negligence at grade-crossing accident shown to have proximately caused injuries.* Plaintiff's contributory negligence is shown to have been the proximate cause of injuries received in a grade-crossing collision between a train and the automobile driven by her where the evidence shows that she approached the highway crossing in question at a rate of speed in violation of Roads and Bridges Act, sec. 145b, Cahill's Ill.

St. ch. 121, ¶ 161, limiting the rate of speed at grade crossings to 10 miles an hour, and continued such excessive speed to the point of collision, that she had driven across such crossing almost weekly for many years and knew of its danger because of the obstruction to view of approaching trains, that she knew the train in question was due, that it did not stop at the village and frequently traversed such crossing at a high rate of speed, that although she looked for such train at a point on the highway several hundred feet distant from the crossing and again about 100 feet therefrom, she drove on without slackening speed and without further observation although the train could have been seen and heard in time to avoid the collision, and that the engine whistle was blown and the bell rung and that the smoke from the locomotive was visible above the obstructions.

11. RAILROADS—*violation of statutory speed limit for automobiles at grade crossing as contributory negligence.* It is contributory negligence barring recovery for injuries received in a grade-crossing accident for the driver of an automobile to operate such automobile at a rate of speed in excess of 10 miles an hour in violation of the provisions of Roads and Bridges Act, sec. 145b, Cahill's Ill. St. ch. 121, ¶ 161, requiring the operator of any self-propelled vehicle to reduce the speed thereof to not more than 10 miles an hour upon approaching any highway crossing a railroad at grade.

Error by defendant to the Circuit Court of Logan county; the Hon. FRANK LINDLEY, Judge, presiding. Heard in this court at the October term, 1922. Reversed. Opinion filed January 17, 1923.

COVEY & WOODS, for plaintiff in error; SILAS H. STRAWN, W. A. COVEY and CHARLES H. WOODS, of counsel.

McCORMICK & MURPHY, for defendant in error.

MR. JUSTICE SHURTLEFF delivered the opinion of the court.

This case was before this court at a former term and a judgment in favor of defendant in error was reversed for failure on the part of defendant in error to show that she was in the exercise of due care and caution for her own safety at and just before the time of the injury in question. The statement of the case and the condition of the pleadings, as they then stood,

are fully set forth in our former opinion, as published in 223 Ill. App. 439.

After the reversal and remandment of this case, as before stated, three additional counts were filed, the *first* of which charged that the defendant, grossly neglecting its duty, recklessly, wilfully, wantonly, carelessly and negligently ran, drove and operated a certain locomotive engine drawing a train of passenger cars, towards, upon and across said public crossing, and thereby and by reason of the said carelessness and negligence of said defendant, through its agents and servants, then and there so carelessly and negligently driving and operating said locomotive engine and train, as aforesaid, the said locomotive engine and train were then and there driven with great force and violence upon and against said automobile, which plaintiff was then and there driving, as aforesaid. The second additional count charged that there was then and there in full force and effect in said village an ordinance of said village, which prohibited the running of any train, locomotive, car or cars within said village upon any railroad track at a greater rate of speed greater than 10 miles per hour, and which made it unlawful to run any train, locomotive, car or cars within said village at a greater rate of speed than 10 miles per hour, and further charged that the defendant, not regarding the said ordinance, and grossly neglecting its duty, recklessly, wilfully and wantonly drove and operated a certain locomotive engine drawing a train of passenger cars greatly in excess of 10 miles per hour, to wit, 30 miles an hour, towards, upon and across said public crossing, and by reason of said recklessness and gross negligence of said defendant, through its agents and servants, then and there so recklessly, wilfully, wantonly, and negligently driving and operating said locomotive engine and train, as aforesaid, the said locomotive engine and train were then and there driven with great force and violence

upon and against said automobile, which plaintiff was then and there driving and riding in, as aforesaid, and thereby the said automobile and the plaintiff were struck with great force and violence, etc.

In the *third* additional count plaintiff avers the location of said two main-line tracks and of said business or team track over and across said public crossing, and that on said sidetrack and abutting on said public highway there were certain freight cars; and further by said count setting out the said obstructions, sheds, lumber yard, oil tanks and trees and elevator building and other buildings, and the presence there of said freight cars, stockyards, etc., and avers that the plaintiff was in the exercise of due care and caution for her own safety; and avers the existence of said village ordinance limiting the speed of railroad trains to 10 miles per hour; and said count avers that it was then and there the duty of the defendant, by reason of the dangerous condition at said crossing, and by reason of said ordinance, to approach said crossing with its engine and trains going from the north at a rate of speed not exceeding 10 miles per hour, and with due care and caution having regard to the safety of people approaching said crossing from the northwest along said highway, and to keep a proper lookout and to keep its engine under proper control, and to give due and necessary signals of warning of the approach of such trains or engines from the north, as aforesaid, to persons traveling on said public highway from the northwest to, towards, across or upon said crossing. Nevertheless, the plaintiff avers that the defendant, then and there by its agents, not regarding the said ordinance, and grossly neglecting its duty in that behalf, recklessly, wilfully and wantonly drove and operated a certain locomotive engine drawing a train of passenger cars greatly in excess of 10 miles per hour, to wit, 30 miles per hour, towards, to, upon and across said public highway crossing without having said engine under control and without having kept

a good and sufficient lookout to observe persons approaching said crossing from the northwest, and without giving any warning of the approach of said train by any signal or otherwise, wherefore, and by reason whereof, the plaintiff was struck, run against and injured, etc.

All three of the additional counts aver that the plaintiff was in the exercise of due care and caution for her own safety.

Inasmuch as this case has been tried in the lower court three times, and has been once before in this court, we have read the entire testimony and given special consideration to the record and the assignments of error made in this case.

Plaintiff in error complains and assigns error upon the rulings of the court in the admission of testimony and overruling plaintiff in error's submission of testimony, and we wish first to give consideration to that feature of the case.

On the third trial of the case, for the first time an ordinance was offered in evidence by plaintiff in error limiting the speed of trains in the Village of Elkhart to 10 miles per hour. A book was produced by the village clerk who testified that the book was not found among the records of his office but that since the former trial the book had been handed to him by Patrick Brennan, one of the village trustees. Brennan did not tell the clerk where it came from. He did not say where it had been before or where he got it from. The clerk says he reached the conclusion it was a village record. He testified that he knew nothing about the book or its prior custody except that Patrick Brennan gave it to him after he had been subpœnaed on the second trial. Witness was appointed village clerk on March 6, 1922. Various portions of this book were offered in evidence over the objection of plaintiff in error and the book contains a copy of a purported ordinance with the purported proceedings of the president and board of trustees of the Village of Elkhart

with the votes recorded, presumably upon the passage of the ordinance. There were six votes aye for the ordinance. The date is not given. The book purports to record the said ordinance of which section 1 reads as follows: ''That no train, locomotive, car or cars shall be run upon any railroad, switch or side track within the corporate limits of said village at a rate of speed exceeding, not more than, ten miles an hour, and any railroad company or any employee of any railroad company, or any other person violating the provisions of this section shall be subject to a penalty of not less than $100 fine for each and every offense.''

Section 5 of the ordinance reads as follows: ''This ordinance shall be in full force from and after its passage, adoption and publication. Passed May 12, 1890. Adopted May 12, 1890.''

Attached to said record is the certificate of M. E. Brennan, as city clerk, under the corporate seal, dated April 23, 1891, certifying to the passage of said ordinance, and as to the posting the same in three public places in said village, but stating nothing as to publication or whether or not there was a newspaper in said village in 1891, or at any other time.

It becomes important to determine the competency of this purported record as evidence in this case. Section 64 of chapter 24 of the Revised Statutes [Cahill's Ill. St. ch. 24, ¶ 67] provides that all ordinances of cities and villages in imposing any fine, penalty, imprisonment or forfeiture, or which make any appropriation, ''shall, within one month after they are passed, be published at least once in a newspaper published in the city or village, or, if no such newspaper is published therein, by posting copies of the same in three public places in the city or village, and no such ordinance shall take effect until ten days after it is so published.''

Section 65 of chapter 24 [Cahill's Ill. St. ch. 24, ¶ 68] provides that all ordinances and the date of pub-

lication thereof may be proven by the certificate of the clerk, under the seal of the corporation, and when printed in book or pamphlet form and purporting to be published by authority of the board of trustees or the city council, and the same need not be otherwise published. The law makes such book or pamphlet prima facie evidence of the ordinance.

Section 14 of chapter 51 of the Revised Statutes [Cahill's Ill. St. ch. 51, ¶ 14] provides: "The papers, entries, records and ordinances, or parts thereof, of any city, village, town or county, may be proved by a copy thereof, certified under the hand of the clerk or the keeper thereof, and the corporate seal, if there be any; if not, under his hand and private seal."

These sections have been construed at various times by our courts and it has generally been held that a copy of an ordinance, duly certified under the signature of the clerk, with the corporate seal attached, was competent evidence and prima facie sufficient to establish the existence of the ordinance. See *Blanchard v. Village of Benton*, 109 Ill. App. 569; *City of Centralia v. Basha*, 206 Ill. App. 333.

But it is to be noticed that the statute requires the publication of the ordinance in a newspaper, if there is such, in the village or city, and it has been held that proof must be furnished of the fact as to the existence of such publication before the certificate as to posting is to be taken as true. See *Schott v. People*, 89 Ill. 195; *Lindsay v. City of Chicago*, 115 Ill. 120; *City of Alton v. Hartford Fire Ins. Co.*, 72 Ill. 328; *Trustees of Elizabethtown v. Lefler*, 23 Ill. 90; *Barnett v. Town of Newark*, 28 Ill. 62.

In *Schott v. People, supra,* it was held under a similar certificate that there was no proof offered tending to establish that the ordinance had been submitted to the voters of the town for their approval or rejection, and that the only evidence of publication was the testimony of John Weber, who said that he saw two notices

put up in at least two places in the town, and the court held that the proof, failing to show a publication, as required by the statute, the evidence of the ordinance should have been rejected.

It is to be noted that section 65 of the Cities and Villages Act [Cahill's Ill. St. ch. 24, ¶ 68] says all ordinances *and the date of publication thereof* may be proven by the certificate of the clerk under the seal of the corporation. And section 64 [Cahill's Ill. St. ch. 24, ¶ 67] provides that all ordinances, etc., shall be published at least once in a newspaper published in the city or village, or, if no such newspaper is published therein, by posting, etc. Under this it is presumed that all ordinances are to be published. It is only in those exceptional cases where there is no newspaper that another provision is made as to posting, and it will be noticed that section 65, in fixing the rule of evidence, does not make the certificate of the clerk prima facie evidence as to "posting," at least unless some further facts are shown, and it would seem to the court to place the proof of such ordinances in the same category as the ordinances that require a vote of the people to render them effective, and that the same rule should apply in such a case as was applied in the *Schott* case.

In this case there is not even a certificate of the clerk stating that no newspaper is published in the Village of Elkhart, and for aught that appears by this record there may be such newspaper published, in which case the ordinance would have no validity unless published in the newspaper. The introduction of the ordinance in this case, under all the circumstances, is considered of very doubtful propriety and, without a further showing made, the same should have been rejected.

The witness James Havey was permitted, on behalf of defendant in error, to testify to the position of cars on the business track when he left to go to Springfield

at 11:30 in the morning. The accident occurred about 4:30 in the afternoon. He was allowed to testify that when he left at 11:30 there was a box car three or four feet north of the north edge of the crossing and there was no attempt made to show by any proof that the conditions at 11:30 a. m. were the same as at 4:30 p. m. but, on the contrary, the evidence of the witness expressly showed that switching was frequently done on the track during the afternoon.

Dr. Compton, having testified as to the injury to defendant in error's nose, was asked on cross-examination in regard to the injury, whether it was apparent or appreciable to a casual observer, which was objected to and sustained.

Dr. Hunter testified on direct examination for defendant in error that there was not an exact alignment of the upper and lower jaws of the plaintiff. On cross-examination he was not permitted to state as a matter of fact whether or not a great many people who had never sustained any injuries have a lack of alignment of the upper and lower jaws, and he was not permitted to state whether that condition did not occur frequently without any injury.

Walter Gallion, a witness on behalf of the defendant in error, was permitted to testify at what rate of speed plaintiff was driving a half a mile and a mile north of this crossing.

Defendant in error Margaret Burns, while on the witness stand, was asked on cross-examination if she had any knowledge of any ordinance of Elkhart as to the speed of trains, to which question an objection was entered, which was sustained by the court. She was further asked if she had any knowledge at that time or before that time of this ordinance that had been introduced in evidence, which was objected to and sustained by the court. The defendant in error was further asked upon cross-examination if she had seen that same train pass through Elkhart on various occa-

sions before, which was objected to and sustained by the court; and various questions upon cross-examination were put to the defendant in error if she had not at various times seen this same train pass through Elkhart without stopping at the rate of 15 to 20 miles an hour, to all of which questions objections were interposed and sustained by the court. The questions were material and proper cross-examination because if the plaintiff had seen the train going through Elkhart before at speed in excess of 10 miles an hour, she would have no right to assume, against her own positive knowledge, that it did not run at such speed. In *Collison v. Illinois Cent. R. Co.*, 239 Ill. 538, it is said: "Of course, a person may presume that a railroad company will not violate the law unless he knows to the contrary, and the instruction was applicable to the case where it was given, but no one can presume a fact against his own knowledge, and in case of a regular train habitually running at a high rate of speed, one who knew the fact could not presume the contrary."

Further questions upon cross-examination were put to the defendant in error, Margaret Burns, as to the speed of her car at and about at the point of the oil tanks, as to which she had testified that it was traveling at from 10 to 15 miles per hour and 10 to 12 miles per hour, questions intended to elicit from the defendant in error her particular knowledge or recollection upon which she based such speed, but to all of such questions objections were interposed and were sustained by the court.

The defendant in error was asked if she had any recollection of slackening the speed of her car after the point where she removed her veil, and she was asked direct if she reduced the speed of her car any after the point where she removed her veil, to both of which questions objections were interposed and sustained by the court. Defendant in error was asked if on the first trial of this case she had not testified that

the last positive recollection she had of anything was taking her veil off at that time, and whether or not she did not answer ''Yes,'' to which question an objection was interposed and sustained by the court.

The witness Boyd was asked to state whether a person approaching that crossing from the west traveling east at the time Miss Burns was injured, such person's view of a train approaching from the north on the southbound main would be obstructed any time after they passed over the switch track, to which an objection was interposed and sustained by the court, and the more specific question was asked: Q. ''You may state as a person approached that crossing from the west, whether or not there was anything to obstruct their view after passing over the switch track,'' to which an objection was interposed and sustained by the court.

Plaintiff in error offered the witness Biggs, a civil engineer, who had made various measurements at the crossing in question and upon the switch or business track, using a hopper car placed at various distances from the north side of the street to correspond with the testimony of the various witnesses, and he was asked to give his measurements and the line of vision and the points and distances from which a person could see with the hopper car placed in the various situations, to all of which objections were interposed and sustained by the court.

These and other matters of rulings by the court upon the introduction of testimony are pointed out by plaintiff in error. The answer to these questions, in the opinion of this court, might have tended to throw light upon the question of the due care and caution exercised by the defendant in error as she approached and drove upon the crossing in question.

The only answer to these assignments of error made by defendant in error's counsel is that a proper consideration of the errors assigned on the matters of ad-

mission or refusal to admit the evidence complained of necessitates a rather detailed examination of the record in order to enable the court to judge as to the correctness of the court's ruling in this respect.

Counsel state: ''As the court will observe, the record in this case is quite voluminous and the evidence of witnesses but briefly abstracted. Upon such examination of the record, touching the matter of the action of the trial court in sustaining objection to the evidence complained of, the court will find that the questions to which objections were sustained had been already asked and answered in various ways.''

This does not answer the assignment of error at all. If the record has not been duly or properly abstracted, counsel for defendant in error should have filed an additional abstract and pointed out to this court wherein such questions had been asked in other places and the answers properly given, so that this court could determine, without examining a record of several hundred pages, wherein the lower court committed error. Many of the rulings cited above on their face, without a further showing, are erroneous.

In addition to this, we have examined the record and find that many of the facts sought to be elicited by the cross-examination were not otherwise brought out.

Among the other instructions submitted, defendant in error offered the following instruction to the jury, which the court gave:

''The court instructs the jury that if you believe from a preponderance of the evidence that the plaintiff was injured by a wilful and wanton misconduct of the defendant, as charged in the additional counts of the declaration, or in any or either of said additional counts, then you should find the defendant guilty even though you may believe from the evidence that the plaintiff prior to and at the time of the injury was not in the exercise of due care for her own safety.''

This instruction plaintiff in error seriously contends was erroneous and that the additional counts in the

declaration did not charge a wilful and wanton injury.

It will be noticed that the additional counts, in the declaration charge that "the defendant, grossly neglecting its duty, recklessly, wilfully, wantonly, carelessly and negligently ran, drove and operated a certain locomotive engine, * * * and by reason of the said carelessness and negligence," etc., and again, that said defendant, grossly neglecting its duty, recklessly, wilfully and wantonly drove and operated a certain locomotive engine in excess of 10 miles an hour, to wit; 30 miles an hour, and by reason of the said recklessness and gross negligence of said defendant, through its agents and servants, then and there so recklessly, wilfully, wantonly and negligently driving and operating said locomotive engine, the said locomotive engine was then and there driven with great force and violence upon and against said automobile, which plaintiff was then and there driving. That substantially the same language is used in the third additional count, into which two last counts, the second and third, is drawn the allegation as to the village ordinance and upon which is predicated the charge of a wilful and wanton injury.

In *Chicago & E. I. R. Co. v. Hedges,* 105 Ind. 398, 7 N. E. 801, the declaration, after mentioning certain obstructions to the view of one approaching said crossing from the north, and further alleging the conduct and due care of the plaintiff, charged that the defendant, by its servants and agents, carelessly, negligently, purposely, wilfully and recklessly caused said train of cars to approach said crossing, and negligently, carelessly, purposely, wilfully and recklessly omitted, by reason of their having detached and driven away the said locomotive engine, as aforesaid, while so approaching said crossing, to give any signal by ringing the bell or sounding the steam whistle, or otherwise, and that by reason of said careless, negligent, wilful and reckless management of said train of cars, they

were thereby driven and run against and upon said Daniel T. Hedges and thereby caused his instant death. The court says that: "Notwithstanding the frequent use of the words 'purposely' and 'wilfully,' the pleading does not charge that the defendant purposely or wilfully killed the intestate, or purposely or wilfully ran the train upon him, or purposely or wilfully caused it to be run upon him. The allegations amount to no more than a charge of killing through negligence." *Ohio & M. Ry. Co. v. Selby,* 47 Ind. 471, 17 Am. Rep. 719; *Cincinnati & M. Ry. Co. v. Eaton,* 53 Ind. 307; *Pennsylvania Co. v. Sinclair,* 62 Ind. 301; *Indianapolis & V. Ry. Co. v. McClaren,* 62 Ind. 566.

In 29 Cyc., p. 574, it is held that: "A direct allegation of wilfulness is necessary if the facts alleged show wilfulness. Where the facts alleged do not show that it was the intention of defendant to inflict an injury, the characterization of the act as wilful will not make the complaint good as charging wilful negligence. It has been generally held that wilful injury is not charged by allegations that the act was committed recklessly, wantonly, purposely, wrongfully or unlawfully."

A complaint in an action for personal injury which alleges the mere intentional omission to perform a duty or the intentional doing of an act contrary to such duty, although culpable and resulting in injury, without further averment, does not state the injury was intentional or wantonly inflicted. *Memphis & C. R. Co. v. Martin,* 117 Ala. 367.

A count in a complaint which charges that the death of plaintiff's intestate resulted by reason of a wilful running of said train at a high rate of speed, but does not aver that the intention in running the train was to inflict the injury, or aver facts which show that defendant knew that the probable result of such conduct would be to inflict injury, is defective as a complaint for injury wilfully inflicted. *Louisville & N. R. Co. v. Anchors,* 114 Ala. 492, 62 Am. St. Rep. 116.

In actions against a railroad company to recover damages for killing a person when the pleading, notwithstanding the frequent use of the words "purposely" and "wilfully," does not charge that defendant purposely or wilfully killed the intestate, or purposely or wilfully ran the train upon him, or caused it so to be run upon him, the allegations amount to no more than a charge of killing through negligence. *Chicago & E. I. R. Co. v. Hedges, supra.*

In *Thrift v. Vandalia R. Co.,* 145 Ill. App. 414, this court held that: "It is charged in several of the counts that the train was recklessly backed in the nighttime, when it was very dark, in disregard of the rights and safety of persons who might be upon said tracks; that the backing of the train was wanton and reckless, and that by reason of such gross and wanton negligence plaintiff was injured, etc.   *   *   *   It is also insisted that even if it be conceded that appellant was a mere licensee, the characterization in several counts of the declaration of the alleged negligent acts of the defendant as wanton, wilful, reckless and heedless, established a right to recover under the rule above stated.  The violation of the ordinance, which is the sole negligence charged, did not constitute wantonness or wilfulness. *Illinois Cent. R. Co. v. O'Connor,* 189 Ill. 559.  It is not sufficiently pleaded that appellee had knowledge, express or implied, of the presence or probable presence of appellant upon the right of way.  It therefore cannot be said that under the circumstances detailed in the declaration, such want of care and disregard for the rights of appellant existed as to constitute wilfulness or wantonness.  It is manifest there could be no wilful disregard of the rights of one whose presence was unknown and could not have been reasonably anticipated."

It has been held in a long line of cases that an averment in a declaration that the defendant wilfully and wantonly operated its train in excess of a speed limit does not state a cause of action.  It is not equivalent

to averring that the injury was wilfully and wantonly inflicted. *Chicago & E. I. R. R. Co. v. Hedges,* 105 Ind. 398; *Belt Railroad & Stockyard Co. v. Mann,* 107 Ind. 89; *Louisville & N. R. Co. v. Anchors,* 114 Ala. 492; *Wright v. Atlantic Coast Line R. Co.,* 110 Va. 670; 6 Thompson on Negligence, sec. 7465; 1 Thompson on Negligence, secs. 20, 21, 22; *Thrift v. Vandalia R. Co.,* 145 Ill. App. 417. The fact that there is a wilful violation of a statute or a municipal ordinance from which an injury occurs does not show that the injury was wilfully or wantonly inflicted. *Henning Brewing Co. v. Atchison, T. & S. F. Ry. Co.,* 150 Ill. App. 514; 33 Cyc. 861; *Thrift v. Vandalia R. Co., supra; Browne v. Siegel, Cooper & Co.,* 191 Ill. 234; *Illinois Cent. R. Co. v. Eicher,* 202 Ill. 556; *East St. Louis Connecting Ry. Co. v. Meeker,* 119 Ill. App. 27; *Blanchard v. Lake Shore & M. S. Ry. Co.,* 126 Ill. 416; *Illinois Cent. R. Co. v. Hetherington,* 83 Ill. 516; *Pittsburg, C., C. & St. L. Ry. Co. v. Kinnare,* 203 Ill. 390; *Chicago & A. Ry. Co. v. Stone,* 109 Ill. App. 517; *Illinois Cent. R. Co. v. O'Connor,* 189 Ill. 559; *Chicago & A. Ry. Co. v. Thompson,* 99 Ill. App. 277.

In so far as the charge of wilfulness and wantonness is made in this case as applied to the first additional count, the count merely charges general negligence committed wilfully and wantonly, and it may be said without further comment that inasmuch as defendant in error was not seen by the driver of the engine, who at no time had any opportunity to see or know that she was upon or coming upon the tracks of plaintiff in error until defendant's engine was at a point not over 60 to 75 feet north of the crossing in question, running at a speed from 20 to 30 miles per hour, that this record is bare of any evidence tending to show wilfulness or wantonness on the part of plaintiff in error to injure plaintiff below.

Under the second additional count, the substance of the charge is that plaintiff in error, not regarding the ordinance and grossly neglecting its duty, recklessly,

wilfully and wantonly drove its engine in excess of 10 miles an hour, to wit, 30 miles an hour, towards, upon and across said public crossing, after having charged the existence of said ordinance, as aforesaid, and no other facts are shown in evidence that would tend in any manner to show wilfulness or wantonness except the violation of said speed ordinance, as aforesaid, which we conclude, under the authorities cited, is not sufficient to sustain or even any evidence to sustain the charge of wilfulness or wantonness.

In the third additional count, various obstructions at the crossing are set out and the ordinance is set out and the duty is charged upon plaintiff in error to approach said crossing with its engine at a rate of speed not exceeding 10 miles per hour, keeping a proper lookout and its engine under proper control, and to give due and necessary signals of warning of the approach of such trains or engines from the north, and the charge is that plaintiff in error recklessly, wilfully and wantonly drove its said engine at such excessive rate of speed without having said engine under control and without having kept a good and sufficient lookout to observe persons approaching said crossing, and without giving any warning of the approach of said train by signal or otherwise.

The fact is, and all of the evidence in substance submitted by both plaintiff and defendant shows, that the train whistled at the "curve," denominated in the testimony of some of the witnesses as the "station" whistle, and that the engine blew the crossing whistles at least twice after the station whistle was given, once at a point about three blocks northeast of the crossing in question and again before arriving at the crossing in question, and while there may be some dispute as to whether one or two whistles were blown after the station whistle was given, still, reading all of this evidence, the substantial preponderance of the same seems to be that two whistles were given and the auto-

matic bell was rung and continued to ring from a point nearly 3,000 feet above this crossing, so that upon an analysis of the evidence the proof covers only such "wilful" and "wanton" act or acts as were committed by a violation of the speed ordinance, as set out in the third additional count of the declaration, and even conceding that these counts properly charged a case of wilful and wanton conduct on the part of appellant, it would seem that the evidence was far short of presenting or even tending to present such a state of facts as has been held by our courts to come within the definition of wilful and wanton as applied to injuries of this kind.

In *Peoria Bridge Ass'n v. Loomis,* 20 Ill. 251, the court said: "That the appellants were negligent in not providing additional precautions against the increased dangers occasioned by the construction of the railroad and its operation by noisy machinery may be true, but it is not of that degree denominated wilful. To constitute wilful negligence, the act done, or omitted to be done, must be intended. Mere neglect to keep a bridge in repair cannot, ordinarily, be alleged to be wilful; and we see no facts in this case to encourage such an idea."

In *Chicago City Ry. Co. v. Jordan,* 215 Ill. 397, the court defines the distinction between wilfulness and negligence, stating: " 'In negligence there is no purpose to do a wrongful act or to omit the performance of a duty. Negligence, even when gross, is but an omission of duty. It is not designed and intentional mischief, although it may be cogent evidence of such an act.' (*Chicago, B. & Q. R. Co. v. Johnson,* 103 Ill. 512. Where there is a particular intention to injure or a degree of wilful or wanton recklessness which authorizes a presumption of an intention to injure generally, the act ceases to be merely negligent and becomes wilful or wanton. In such a case there may be an actual intent to injure or such a conscious or inten-

tional disregard of the rights of others as to warrant a conclusion that an injury was intended. The true rule was stated in the case above cited, that in negligence, merely, there is no purpose to do a wrongful act or omit the performance of a duty, but that there may be such a dereliction of duty as will furnish evidence of a wilful or wanton act.''

It is to be noted that there is a distinction between negligence and wilfulness. Negligence presumes heedlessness, carelessness, even recklessness, without the purpose or intent to injure, while the very gist of wilfulness and wantonness presumes the intent to injure. Negligence is not wilfulness or wantonness and wilfulness or wantonness is not negligence. It has been urged that there is no well-considered case in this State where a railroad company was held liable for wilfulness or wantonness, where the peril of the party was not seen, unless the person was injured at ''a public street'' or ''an open place'' or ''a public place open to the public,'' and many cases tend to confirm that view.

It can hardly be said under all of the testimony and facts submitted in this case that the crossing in question in the Village of Elkhart where plaintiff's automobile, for aught that appears in this record, was the only machine at the time upon the streets of the village and where from various parts of the village the crossing in question could be seen, that it was such an open thoroughfare and so congested that the rule of wilfulness and wantonness should be applied.

In *City of Chicago v. Martin*, 49 Ill. 246, it is held that wilfulness and wantonness must be the result of intention and that mere negligence could not, ordinarily, be ranked as wilfulness.

It is the opinion of the court that the testimony submitted in this cause does not show, nor even tend to show, any intention on the part of appellant, or its servants, to wilfully or wantonly injure defendant in error, and that it does not show, or tend to show, any

such conduct on the part of appellant's servants as would indicate such disregard for the life and safety of the defendant in error or others that might be at said crossing, from which, such intent might be inferred.

It is further the opinion of this court that the first, second and third additional counts do not charge the wilful and wanton injury of defendant in error, which charge in the declaration could only form the basis for the submission of the instruction set out, and we therefore conclude that the giving of such instruction in this case was error, for which the judgment of the court and the verdict of the jury must be set aside.

Plaintiff in error seriously contends in its brief that the defendant in error, while approaching and at the crossing in question, was not in the exercise of due care or caution in her own behalf and that the judgment should be reversed without remanding.

This case has been before this court on a former hearing upon substantially or nearly the same state of facts, and was reversed on the ground that the record did not show that the plaintiff was in the exercise of due care for her own safety. After the former reversal defendant in error amended her declaration by the addition of the three counts, hereinbefore set out, and for the first time submitted proofs of the ordinance of the Village of Elkhart. In the former record it appeared that defendant in error at a point about 200 feet northwest of the crossing in question, at the oil tanks, removed her veil and looked north and south to see if a train was approaching the crossing, and testified on the former trial that thereafter she did not look in either direction and had no recollection of what she did after leaving the oil tanks. In the present record defendant in error testifies that she removed her veil at about the same point at the oil tanks, and looked north and south up and down the tracks of plaintiff in error and saw or heard no train approaching from either direction. She testifies in this case

that at a point about 100 feet northwesterly from the crossing in question she looked and listened for an approaching train, and, seeing and hearing nothing, proceeded upon her course.

Defendant in error testified that on the trip in question: ''I was driving between 10 and 15 miles an hour, that was true the entire distance.   *   *   *   I know where the oil tanks are that are west of the C. & A. railroad and north of the road that crosses the railroad. As I got to those oil tanks I removed a veil from my face that day. I was about in front of those oil tanks when I did it. My car was traveling as I did it. As I was coming up to the railroad track I wanted to look out for a train. As soon as I removed my veil I looked to see if a train was coming, looked both north and south but didn't see any. My left eye gives me trouble. I have to wear glasses at work.   *   *   * Didn't discover any train approaching by my observation.   *   *   *   That day the car was in good working condition and the mechanism was all in good working order. It was a quiet running car. When I started in from my father's house I drove at the rate of between 10 and 15 miles an hour. Did that all the way from the time I left my father's house until the accident. *   *   *   Within a hundred feet of the track I looked, a hundred feet west of the switch track; that was the first time I had looked to see if a train was approaching. I didn't see any train. The place I removed my veil was east of the building of the Standard Oil Company, close to the tank. I am sure of that. I was east of the oil tanks and I was close to the tanks when I removed my veil. The oil tanks are about 200 feet from the track. I was about 200 feet west from the west rail of the switch track when I removed my veil. When I looked at this place 100 feet west of the switch track I saw no train approaching. After I passed that point 100 feet west of the switch track I don't remember any more of looking to see if a train was approaching. That was the last I remember. The last I re-

member was 100 feet west of the switch track when I looked to see if a train was approaching. * * * I had been over that crossing practically every week for six or seven years before this time. I was thoroughly familiar with the crossing and its surroundings at this time when the accident occurred. That crossing and all its surroundings had been in practically the same condition for practically five or six years before. At the time I approached this crossing I knew there was a limited train due. I knew the southbound limited train was about due at that time. I also knew that the train was not scheduled to stop at Elkhart.''

The foregoing is all of the testimony given by defendant in error as to her actions and conduct upon approaching the crossing in question. Defendant in error produced the witness John Hinman, who saw defendant in error at the oil tanks and saw the accident. This witness says that: "When I first observed the car approaching it was about opposite the oil tanks and coming toward the crossing. I continued to watch it as I expected something would happen. I observed no slackening or change in the speed of the car at all. I saw the train as it went over the crossing just the width of the street.'' The witness was standing about a block and a quarter east of the place where the accident happened.

Defendant in error produced the witness Walter Gallion, who testified that defendant in error's car at the Shockey place, being about one-half mile from the crossing, was traveling at the rate of from 10 to 15 miles an hour. Defendant in error also produced Haden Leftwich, a boy sixteen years of age, who lived in Elkhart, and at the time of the accident was about 50 feet west of the oil tanks and about 30 to 40 feet north of the roadway that leads from the crossing to the highway north and south. He was feeding hogs in a lot.

Witness states that after Miss Burns passed him his attention was drawn towards a train someway. He says he does not know what it was that attracted his attention to the train. He saw the plaintiff before she was injured. Witness states: "First saw her a little ways north of the turn that turns into the road going toward the crossing where she was hit. She was going south then. She then turned and went toward the railroad track and went past where I was. I noticed that she removed a veil from her face as she passed me. When she did that she was nearly even or nearly due south of the oil house where they keep their oil. That oil house is due west of the west oil tank and about 20 feet west of it. * * * Between where I stood and the railroad were two oil tanks and the oil house; nothing else, no trees. No elevator between us but there was an elevator north of me and one southeast of me. South of the southeast elevator and between me and the track there were some stockyards and some lumber sheds, coal houses, and a little office room, some trees. There was one coal car on the sidetrack there that I noticed. Didn't notice there was any more. * * * I would judge the plaintiff's automobile in which she was riding was traveling at about 12 or 15 miles an hour as she passed me. After she passed I could see her for a space of 30 feet and after that the oil shed interfered with my seeing her."

The above constitutes all of the evidence submitted by defendant in error to show due care and caution on her part at the time of the accident. The only other witness who saw defendant in error at the time of the accident as she approached and was upon the crossing was the engineer of the train, E. E. Ellsworth. This witness says: "I saw the automobile in which the plaintiff was traveling that day. When I first saw it I was right close to that crossing. About the time I saw the front of the automobile I was about 50 feet of the crossing. By that I mean the front end of my engine was about 50 feet from the crossing. I was approxi-

mately 45 or 50 feet back from the front end of the engine. I first saw the front wheels and the radiator of plaintiff's automobile. The front end of the car at that time was just a little west of the west rail of the business track. I put the emergency on then—put it on full power. I first observed Miss Burns just after she had passed over the track, when she was a little inside the business track, a little toward the main. When I saw her she was looking straight ahead over her car. I continued to observe her until she went out of sight past the front end of the engine. She was looking straight ahead until she got about half way between the two tracks and then she looked right up at the engine. From the time I first saw her by the switch track until she got half way between the two tracks, she was looking straight ahead. The first time she looked up was when she was possibly half way between the two tracks. When she looked up the front end of her car was a little more than half way between the business track and the main track. I observed her long enough between the switch track and main track to be able to judge of her speed. She was traveling then between 10 and 15 miles an hour I think, closer to 15. I threw my engine into emergency right at the moment that she showed up and just as quick as I could slammed it in. Did all I could to bring the train to a stop as quickly as possible. * * * I didn't at any time observe any slackening of the speed of the car in which Miss Burns was driving as it came over the switch track and onto the southbound main.''

The above is all of the testimony in this regard as to the due care and caution or contributory negligence on the part of the defendant in error. It is true that the question of due care and caution on the part of plaintiff is usually a question for the jury and if there is any evidence tending to show due care and caution on the part of a plaintiff, the same should be submitted to a jury. *Milauskis v. Terminal Ry. Ass'n*, 286 Ill.

547; *Pienta v. Chicago City Ry. Co.,* 284 Ill. 246, and cases cited.

It is further true that failure to look and listen before crossing a railroad track cannot be said to be negligence as a matter of law. *Dukeman v. Cleveland, C., C. & St. L. R. Co.,* 237 Ill. 104; *Gilberts v. Rockford & I. Ry. Co.,* 215 Ill. App. 324, and other cases cited by defendant in error in her brief.

It is, however, elementary and the law of this State, that a plaintiff to recover upon the charge of negligence against the defendant must submit some evidence showing or tending to show that the plaintiff was in the exercise of care for her own safety, and plaintiff should show at least that she is not violating the law on her part. At the time of this collision and down to the very moment when defendant in error's automobile was struck, by her own testimony and by all of the testimony submitted, her machine was traveling at a rate of from 10 to 15 miles per hour. Defendant in error herself estimates the speed of her car at from 10 to 15 miles per hour. This rate of speed was in violation of the laws of this State. Section 145b of the Roads and Bridges Act, adopted and in force July 1, 1917 [Cahill's Ill. St. ch. 121, ¶ 161], provides: "Upon approaching any highway crossing a railroad at grade, the person controlling the movement of any self-propelled vehicle shall reduce the speed of such vehicle to a rate of speed not to exceed ten (10) miles per hour." This the defendant in error did not do at the time of the collision in question. By her own statement and by the testimony of witnesses produced by her, she was traveling at the rate of speed of from 10 to 15 miles per hour and continued at that rate of speed directly down to the point of collision. The conduct of defendant in error, as shown by her own testimony and that of her witnesses, seems unaccountable. By all of the evidence, when defendant in error was at the oil tanks and removed her veil, appellant's engine and train could not have been over 600 feet, less than

two blocks, from the crossing in question. The whistle had blown twice. The bell was continuously ringing. There must have been smoke emitted from the engine that would rise above the low stockyards and lumber shed that would apprise an approaching traveler, even if no sound was heard, that a train was approaching, if the traveler was in the use of any of his senses, under the surrounding circumstances. Defendant knew of this crossing and its dangers and had crossed these tracks once a week for several years previously. Defendant in error received a serious injury and there may have been something about the nature and period of her unconsciousness, which was testified to by the physicians, that would have some bearing upon her memory and recollection after leaving the oil tanks in question, but this record is barren of any testimony, expert or otherwise, showing or tending to show that defendant in error's memory was in any manner affected thereby. There may have been other circumstances in the physical condition of defendant in error or in connection with her surrounding that led her to pursue her course from a point 100 feet west from the crossing in question and from the west sidetrack without further making any effort or doing any act to observe or see what was upon the dangerous crossing ahead of her or upon the tracks of defendant's railroad. But if there were any such circumstances in the mind or physical condition of defendant in error or in the surroundings at the point in question, they have not been brought out or attempted to be brought out and presented in this record by defendant in error.

This case is before this court on the question of contributory negligence substantially upon the same state of facts as it was before, and it is shown by the plaintiff's own testimony, not only that she was not in the exercise of due care and caution in her own behalf, but that she was at that time violating the laws of the State.

In *Chicago & A. Ry. Co. v. Gretzner,* 46 Ill. at page

84, the Supreme Court of this State said: "When railways cross public streets on the same level, there is very great exposure to accidents of this nature, and consequently great vigilance is demanded by those attempting the crossing, and the use of all proper precautions. What these shall be, it is difficult to particularize, but that to slacken speed, keep a good 'lookout' and approach the crossing as a dangerous place, are some of them."

This the defendant in error did not do, and as said by Mr. Justice Caton, in *Illinois Cent. R. Co. v. Buckner,* 28 Ill. 301: "However our sympathies may be with the plaintiff below, the law must take its course. Whatever dispute there may be about the speed at which the train was running, there are other facts about which there is no dispute. Whether this be a regular road crossing of the track or not, it is not controverted that the plaintiff approached the crossing from the west in such a position that he could see the train for a considerable distance if he had looked, and could have heard it for nearly half a mile, according to the testimony of his own witnesses, if he had possessed the faculty of hearing in an ordinary degree."

It may be that due care does not require the sense of hearing to be used by one riding in an automobile under the present-day method of locomotion, but due care at least does require a person in an automobile to comply with the law of the State. Had plaintiff in error's train been derailed by this collision, as well might plaintiff in error have sued defendant in error for the injury and damage and based defendant in error's negligence upon violation of the State law.

In the opinion of this court the proximate cause of the injury to defendant in error was her own contributory negligence and the court finds as an ultimate fact in this case to be incorporated in the judgment of this court:

That the defendant in error in approaching and

while at the crossing in question at the time of said collision was not in the exercise of due care and caution for her own safety.

The judgment of the lower court is reversed.

*Reversed with finding of fact.*